CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

Howard Moore, Jr., Esq. (SBN 55228)
**MOORE & MOORE**
1569 Solano Avenue, #204
Berkeley, CA 94707
Tel: (510) 542-7172 / Fax: (510) 528-3024
Email: moorlaw@aol.com

David C. Anderson
LAW OFFICES OF DAVID C. ANDERSON
591 Redwood Hwy., Bldg. 4000
Mill Valley, CA 94941-3039
Phone: (415) 395-9898
Facsimile: (415) 395-9839
Email: cynthia@dcandersonlaw.com

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ALISON COLLINS,<br><br>                Plaintiff,<br><br>        vs.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>                Defendants. | Case No.:  **4:21-cv-02272-HSG**<br><br>**PLAINTIFF ALISON COLLINS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  Thursday, August 19, 2021<br>Time:  2:00 PM<br>Courtroom:  Courtroom 2 – 4th Floor<br>Judge:  Honorable Haywood S. Gilliam, Jr. |

1

2  **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 1

LEGAL ARGUMENT ......................................................................................................... 4

    I.    The Eleventh Amendment Does Not Bar Actions for Injunctive Relief Against Defendants in their Official Capacities ........................................................................ 4

    II.    Ms. Collins has Sufficiently Alleged a Violation of her First Amendment Rights ......... 4

        A.    Ms. Collins Spoke as a Private Citizen on a Matter of Public Concern........................... 4

        B.    Ms. Collins Speech was Uttered within a Public Forum................................................. 5

        C.    In Speaking as a Private Citizen, Ms. Collins was Afforded the Most Expansive Protection........................................................................................................................ 6

        D.    Under *Bond v. Floyd,* an Elected Official is Afforded a Heightened Degree of Protection When Speaking on Matters of Policy and Public Concern .................................... 7

        E.    Circuit Courts Have Greatly Diminished the Protection Afforded an Elected Officials Speech Against Retaliation.................................................................................. 8

        F.    Were Ms. Collins' Twitter Posts Construed as Elected Official Speech, the Standards under *Blair v. Bethel School Dist.* are Not Met Given the Facts and Circumstances at Bar . 12

    III.    Ms. Collins Right to be Free From Retaliation for Exercising her First Amendment Right is Clearly Established Such that Defendants are Precluded from Invoking Qualified Immunity 15

    IV.    Ms. Collins Has Sufficiently Alleged a Fourteenth Amendment Liberty Interest in both her Good Name and Reputation, as well as Her Interest in Freedom to Work and Earn a Living. 18

    V.    Ms. Collins Has Sufficiently Alleged a Fourteenth Procedural Due Process Claim ..... 19

    VI.    Ms. Collins Has Sufficiently Alleged a State Claim of Intentional Infliction of Emotional Distress ...................................................................................................... 20

    VII.    As the Question of Whether State Law Conceives of an Elected Official as an Employee has Not Been Categorically Foreclosed, Ms. Collins' State Claims That Require Employment Status Have Been Sufficiently Alleged ...................................................................... 21

CONCLUSION.................................................................................................................. 21

1

2

# TABLE OF AUTHORITIES

**Cases**

*Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 545 (9th Cir.2010)................................................. passim

*Bond v. Floyd,* 385 U.S. 116, 135-37, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966)............... 7, 8, 9, 20

*Brodheim v. Cry,* 584 F.3d 1262, 1274 (9th Cir. 2009).............................................. 13

*Camacho v. Brandon,* 317 F.3d 153, 166 (2d Cir. 2003) ...................................... 9

*Cf. Westfall v. City of Crescent City* 2011 U.S.Dist.LEXIS 57353, at *15(N.D.Cal. May 26, 2011)
........................................................................................................................ 16

*Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 339-40, 130 S. Ct. 876, 175 L. Ed. 2d 753
(2010)........................................................................................................... 6

*City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) ............ 6

*Coal. to Defend Affirmative Action v. Brown,* 674 F.3d 1128, 1134 (9th Cir. 2012) .................... 3

*Collins v Morris* 263 Ga. 734 438 S.E.2d 896 (1994) ................................................ 23

*Connick v. Myers,* 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)................. 4, 5, 12, 19

*Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004)............................................. 24

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758-59, 105 S. Ct. 2939, 86 L.
Ed. 2d 593 (1985) ........................................................................................ 4

*Ex parte Young*, 209 U.S. 123 (1908)......................................................................... 3

*FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 377, 104 S. Ct. 3106, 82 L. Ed. 2d 278
(1984)........................................................................................................... 4

*Foretich v. United States,* 351 F.3d 1198, 1211, 359 U.S. App. D.C. 54 (D.C. Cir. 2003) ......... 23

*Garcetti v. Ceballos,* 547 U.S. 410 (2006) .................................................................. 15

*Givhan v. Western Line Consolidated Sch. Dist.,* 439 U.S. 410, 415-16, 99 S. Ct. 693, 696-97, 58
L. Ed. 2d 619 (1979) ..................................................................................... 5

*Greenman v. City of Hackensack,* 486 F. Supp. 3d 811, 827(D.N.J. 2020) ............................... 17

*Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir. 1999) ...................................... 13

*Holloway v. Clackamas River Water,* 2014 U.S.Dist.LEXIS 170616, at *7(D.Or. Dec. 9, 2014)15

*Hope v. Pelzer,* 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ......................... 19

*Hyland v. Wonder,* 972 F.2d 1129, 1141 (9th Cir. 1992) .............................................................. 22

*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ................................................................... 4

*Laird v. Tatum,* 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972) .................................... 13

*Llamas v. Butte Community College Dist.,* 238 F.3d 1123, 1129 (9th Cir. 2001) ........................ 22

*Marina Point, Ltd., v. Wolfson* 30 Cal.3d 721, 740-741, fn. 9(1982) ........................................... 25

*Miller v. Cal.,* 355 F.3d 1172, 1178-79 (9th Cir. 2004) ................................................................ 23

*Mustafa v. Clark Cnty. Sch. Dist.,* 157 F.3d 1169, 1179 (9th Cir. 1998) ..................................... 24

*Newby v. Alto Riviera Apartments 60 Cal. App. 3d 288 (1976* ..................................................... 25

*Packingham v. North Carolina,* 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017).  ...................... 6

*Paul v. Davis,* 424 U.S. 693, 711, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) ................................ 22

*Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .................... 18

*Peeper v. Callaway County Ambulance Dist.* 122 F.3d 619, 623(8th Cir. 1997) .......................... 17

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 445-46, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983) ................................................................................................................................ 6

*Pickering v. Board of Education of Township High School District* 205, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) ..................................................................................................... 5

*Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006) ................................. 12, 20

*Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 907 (9th Cir. 1993) ........................................... 22

*Republican Party of Minn. v. White*, 536 U.S. 765, 781-82, 122 S. Ct. 2528, 153 L. Ed. 2d 694 (2002) ............................................................................................................................................ 9

*Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 34 (1st Cir. 1996) ....................................... 10

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) .......................................................................................................................... 6

*Sweatt v. Painter,* 339 U.S. 629, 631, 70 S. Ct. 848, 94 L. Ed. 1114 (1950) .............................. 15

*Taylor v. Barkes,* 575 U.S. 822, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015) ................................ 19

*Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 641, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). 7

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) .............................................................................................................. 3

*Werkheiser v. Pocono Township,* 780 F.3d 172, 181 (3d Cir. 2015) ..................................... passim

*Wilk v. Neven,* 956 F.3d 1143, 1148 (9th Cir. 2020) .................................................... 18

*Wilson v. Houston Cmty. College Sys.* 955 F.3d 490, 497(5th Cir. 2020) ............................. 9, 11

*Wilson v. Robinson,* 668 F.2d 380, 382-383 (8th Cir. 1981) ........................................ 24

*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971) .......... 22

*Zilich v. Longo,* 34 F.3d 359, 363 (6th Cir. 1994) ........................................... 10, 11, 20

## Statutes

26 U.S.C. § 3401(c) ........................................................................ 21

Cal. Labor Code § 3351 ..................................................................... 21

Cal. Un. Ins. Code § 1279 .................................................................. 21

California Labor Code § 1102.5 ............................................................. 21

Government Code section 815.2 ............................................................. 21

## Other Authorities

BAJI No. 12.77 (6th ed. 1977) .............................................................. 20

Restatement (Second), Torts § 46, cmt. d (1965) .......................................... 20

Section 1983 First Amendment Retaliation ................................................. 15

## Constitutional Provisions

First Amendment ...................................................................... passim

Fourteenth Amendment ................................................................. 19, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

On March 24, 2021, DEFENDANTS took illegal actions to punish PLAINTIFF ALISON COLLINS ("MS. COLLINS), in violation of MS. COLLINS' First Amendment Rights of free speech, for a series of tweets published on December 4, 2016, nearly four and one-half years ago when MS. COLLINS was a private, non-governmental employee.

On March 24, 2021, DEFENDANTS drafted a "Resolution" to remove Commissioner PLAINTIFF ALISON COLLINS ("MS. COLLINS) from her position as Vice-President of the San Francisco School Board, and upon giving 24 hours' notice, on March 25, 2021, voted 5-2 passing that "Resolution", stripping PLAINTIFF ALISON COLLINS of her vice-president position and membership on all committees.

Predictably, like all wrongdoers, DEFENDANTS seek to escape accountability by bringing their ill-conceived motion to dismiss, which, as compelled by the facts, law and equity, must be dismissed.

## STATEMENT OF FACTS[1]

As a parent of two mixed race children who attended public school within the San Francisco Unified School District, Plaintiff Alison Collins ("Ms. Collins") was horrified at having to accept that every day her children's safety, as well as the safety of other Black and Latino children in the school district, were at risk and that the other so called minority voices in the District were not only ignoring the situation but exacerbating it by drawing distinctions between their children and the Black and Latino children. Collins Complaint, dated March 31, 2021(Dkt.1 "Complaint" ¶¶ 3, 42.)

Rather than silently sit idly by and accept that inequities, racism and discrimination are immutable and simply a part of the fabric of the City of San Francisco, Ms. Collins actively engaged in working to change the system to make a safer and more inclusive world for her children. (Dkt.1 "Complaint" ¶¶ 4, 43-46.) Upon the election of Donald Trump and his perceived explicit

---

[1] MS. COLLINS incorporate all facts stated in her Complaint for Damages (Dkt.1) and in her Motion for an Order to Show Cause (Dkt.23) as though fully set forth herein.

embrace of white supremacy and exclusion, Ms. Collins, with increased urgency of having to take action to ensure the safety of her children and the other Black and Latino children in her community, affirmatively spoke to the need of unifying all the 'minority' voices in her school district with the hopes of mounting a unified resistance to stemming further encroachment of white supremacy.

As a means furthering this message, Ms. Collins utilized social media, in particular Twitter, to speak directly to the community and articulate her concerns with infighting and otherwise lack of solidarity amongst the various communities in the school district. On December 4, 2016, Ms. Collins spoke to these issues on Twitter which subsequently served as the motivation for Defendants to take the actions and ensuing harms that form the basis of Ms. Collins' instant lawsuit. (Dkt.1 "Complaint" ¶ 2.)

Ms. Collins' advocacy and commitment to bringing about just and equitably inclusive educational opportunities for all students increased, leading her to run for a commissioner seat on the S.F. School Board. In November 2018, Ms. Collins was elected to the S.F. School Board with a plurality of the votes cast. During her term, Ms. Collins followed through with the promises she made to her constituency in bringing more policies of inclusivity into the district. One such policy initiative was to open the enrollment status of several of San Francisco's exclusive public high schools, in particular Lowell High School where Black and Latino students have been grossly underrepresented. (Dkt.1 "Complaint" ¶ 47.) It is particularly Ms. Collins' advocacy on this issue that incited the retaliation that Ms. Collins has come to incur.

Such indeed came to pass when on or about March 2021, Ms. Collins' December 2016 Twitter posts, drafted prior to her election to the school board when still a private citizen parent, wherein Ms. Collins' levied criticisms upon the school district's Asian-American community's refusal to join in solidarity with the Black and Latino students in seeking equity and fairness within the school district. (Dkt.1 "Complaint" ¶ 2.) As Ms. Collins' 2016 'tweets' were unearthed in or around February 2021 at a time when San Francisco and the United States was seeing a spike in anti-Asian violence and racism, the response to Ms. Collins' posts were met with virulent and impassioned fervor. (Dkt.1 "Complaint" ¶¶ 53. 54) Immediately, Defendants and the community

(and world!) at large, clamored for an immediate judgment that Ms. Collins' posts were unequivocally racist and reflexively worthy of punishment.

This in fact occurred, with Defendants immediately requesting Ms. Collins' resignation. (Dkt.1 "Complaint" ¶¶ 51, 53, 54.) The call for Ms. Collins' resignation resounded across social and conventional media, both nationally and worldwide. (Dkt.1 "Complaint" ¶¶ 8, 38, 50.)

On March 20, 2021, Ms. Collins made a formal apology acknowledging the correlation between her Twitter posts and the rise in Anti-Asian violence, acknowledging that her 2016 were made within a particular time, place and context and within the shadow of Donald Trump's racism and anti-immigration agenda. Ms. Collins took full responsibility for her posts and apologized for the pain that they might have caused. She reiterated that she had reached out to the leaders of the Asian American community in San Francisco and stood in solidarity with them and their community.  (Dkt.1 "Complaint" ¶ 5.) Three days later, Ms. Collins publicly apologized during a Board of Education meeting. (Dkt.1 "Complaint" ¶6.)

Disregarding Ms. Collins' apology, on March 24, Defendants sought to expedite Ms. Collins' resignation by drafting a resolution censuring Ms. Collins and publicly requesting her resignation. (Dkt.1"Complaint" ¶11) Ms. Collins to refuse to resign. The resolution removed Ms. Collins from her Board vice president post, as well as the entirety of her Board committee assignments. (Dkt.1 "Complaint" ¶ 55.)  In haste and dispensing with proper Board rules and protocol for bringing a resolution to vote, (Dkt.1 "Complaint" ¶¶ 55, 57) Defendants voted on March 25, 2021, to take up the resolution to censure Ms. Collins and remove her from her post as Board vice president and all committee assignments. (Dkt.1 "Complaint" ¶59) The resolution was passed by a vote of 5-2 with both Ms. Collins and Board President Gabriela Lopez casting the two nay votes. (Dkt.1 "Complaint" ¶ 60.)

By stripping away Ms. Collins' post of Board vice president and the entirety of her committee assignments as a knee jerk retaliatory response to Ms. Collins' protected speech uttered prior to her assumption of her elected office, Defendants have patently violated Ms. Collins' rights which form the basis of her instant action.

## LEGAL ARGUMENT

### I.  The Eleventh Amendment Does Not Bar Actions for Injunctive Relief Against Defendants in their Official Capacities

While the Eleventh Amendment protects states from suits brought by citizens in federal court, pursuant to the *Ex parte Young* doctrine, Eleventh Amendment immunity "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002). Similarly, "suits against government officials in their individual or personal, rather than official capacities, are not barred by the Eleventh Amendment." *Roe ex rel. Callahan v. Gustine Unified School Dist.,* 678 F. Supp. 2d 1008, 1022 (E.D. Cal. 2009), citing *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir. 1990).

Here, as required under section 1983, Ms. Collins has demonstrated that each Defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). See (Dkt.1 "Complaint" ¶¶ Lam, 51, 54; Moliga, 54, 56. All Defendants, 4, 7, 13, 47, 57;( Order to Show Cause (Dkt.23), dated May 26, 2021: All Defendants, p. 4:19-22; p. 6:1-7; Moliga, 11:5-7, 14:12-21; Lam, 14:12-21.

### II.  Ms. Collins has Sufficiently Alleged a Violation of her First Amendment Rights

#### A.  Ms. Collins Spoke as a Private Citizen on a Matter of Public Concern

When considering that the First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail," *FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 377, 104 S. Ct. 3106, 82 L. Ed. 2d 278 (1984) speech on matters of public concern . . . is at the heart of the First Amendment's protection," *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758-59, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985)

In *Connick v. Myers,* 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983), the Supreme Court reiterated such by declaring:

The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the [Supreme] Court has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy [sic] of First Amendment values and is entitled to special protection. *Connick,* 461 U.S. at 145. Speech involves a matter of public concern if the speaker's "expression can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Id.* at 146.

In 2016, and two years prior to taking on the role of an elected S.F. school board member, Plaintiff Alison Collins, as a private citizen and as a parent of children who attended San Francisco public schools, expressed her concerns with that she perceived to be discrimination and inequities in her children's school and in an attempt to address such, sought to coalesce solidarity amongst the various ethnic and racial communities in the school district. Complaint, 39, 71. She did so under the clearly established understanding that criticism of a school district's policies involved a matter of public concern. *Givhan v. Western Line Consolidated Sch. Dist.,* 439 U.S. 410, 415-16, 99 S. Ct. 693, 696-97, 58 L. Ed. 2d 619 (1979)(criticism of racial discrimination in school district); *Pickering v. Board of Education of Township High School District* 205, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) (criticism of Board of Education by employee for its allocation of school funds).

## B.    Ms. Collins Speech was Uttered within a Public Forum

In exercising her otherwise protected speech, Ms. Collins' did so utilize a 'public forum' such that her speech was afforded protection by the highest standards of review of restrictions on speech. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 445-46, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983). It is by now well established that the interactive space of a social media page is a public forum, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) and has been identified as "the most important place[] in a spatial sense for the exchange of views." *Packingham v. North Carolina,* 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017).

Here, in relying on Twitter as a social media provider in disseminating her concerns with the way her children and other children of color were being treated at school, as well as her call for solidarity amongst the diverse communities within the school district, Complaint 2, 39. Ms. Collins was unequivocally exercising her First Amendment rights in a public forum. As Ms. Collins was a private person expressing matters of public concern within a public forum, had the government attempted to limit or circumscribe the content or subject matter of Ms. Collins' speech on Twitter, they would have had to survive strict scrutiny standard of review, i.e., they would have to prove that their action or regulation of Ms. Collins' speech was taken on account of a compelling state interest, and that their action or regulation was "narrowly tailored" to further that compelling interest." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 339-40, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010). Strict scrutiny is thereby "the most demanding test known to constitutional law." *City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994)("…the most exacting scrutiny [is applied] to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content.").

### C.   In Speaking as a Private Citizen, Ms. Collins was Afforded the Most Expansive Protection

When Ms. Collins disseminated her tweets as a private citizen/parent on matters of public concern in 2016, some two years prior to being elected to the S.F. school board, the First Amendment afforded her, as a private individual, the broadest and most expansive protection of those rights. Fast forward, two years later, Ms. Collins' commitment to bringing about equity and justice in the school district prompted her to enter public service so that she could affirmatively usher in and initiate school district policies that would finally cure the systemic inequities that had plagued generations of minority students. OSC: 3:24-4:2, Upon entering the hallowed halls of the San Francisco Unified School District as an elected Commissioner to the Board of Education, that level of protection that Ms. Collins' was otherwise afforded as a private individual instantly changed.

1

2

D. **Under *Bond v. Floyd*, an Elected Official is Afforded a Heightened Degree of Protection When Speaking on Matters of Policy and Public Concern**

3

4

While the United States Supreme Court initially afforded an elected official "the widest

5 latitude to express views on issues of policy" without being subject to retaliation" as the central

6 commitment of the First Amendment was that 'debate on public issues should be uninhibited,

7 robust, and wide-open" *Bond v. Floyd*, 385 U.S. 116, 135-37, 87 S. Ct. 339, 17 L. Ed. 2d 235

8 (1966), several circuit courts, including the Ninth Circuit, have subsequently severely narrowed

9 that protection such that an elected official speech is now scantily protected against the whims of

'cancel culture' political retaliation by his or her elected officials colleagues.

10

11

In *Bond v. Floyd*, Petitioner, Julien Bond, while a private individual serving as the

12 communications director for the Student Nonviolent Coordinating Committee ("SNCC"), a civil

13 rights organization involved in the struggle for liberation and self-determination of African

14 Americans as well as all oppressed populations, authored a statement that took exception to United

15 States foreign policy in Vietnam. At the time Bond communicated both his own and SNCC's

16 perspectives on U.S. involvement in Vietnam, he was also awaiting being sworn in as an elected

17 representative to the Georgia House of Representatives. *Id.* at 116. Based expressly on account of

18 Bond's speech, members of the Georgia Legislature sought to bar Bond from taking an oath of

19 office as a member of the House of Representatives.

20

In upholding Bond's right to express his views on matters of public concern in the same

21 capacity as a private citizen without being subjected to retaliation from his representative

22 colleagues, the Supreme court stressed that "legislators have an obligation to take positions on

23 controversial political questions so that their constituents can be fully informed by them . . . so

24 [constituents] may be represented in governmental debates by the person they have elected to

25 represent them." *Id.* Thus, rather than an elected official having to relinquish their protected speech

26 upon assuming elected office, the Supreme court stressed that an elected official's speech retains

27 the same degree of protection as held by a private citizen when speaking on a matter of public

concern. *Id.* at 136("the interest of the public in hearing all sides of a public issue is hardly

28 advanced by extending more protection to citizen-critics than to legislators.").

In holding that Bond's disqualification from membership in the Georgia House on account of his statements violated his right of free expression under the First Amendment, the court made no mention that its holding was premised upon the result that a disqualification would have had on undermining the electoral process by denying voters their rightful choice of their elected representative. *Id.* at 137. Rather, the court affirmed that an elected official retains robust protection against retaliation undertaken by his or her elected colleagues.

The Supreme court has remained consistent with its holding in *Bond*, see *Republican Party of Minn. v. White*, 536 U.S. 765, 781-82, 122 S. Ct. 2528, 153 L. Ed. 2d 694 (2002) ("the role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance"). Several circuits rightfully adhere to the precedential value that affords a heightened degree of protection to elected officials when speaking on matters of policy and public concern. See, *Camacho v. Brandon*, 317 F.3d 153, 166 (2d Cir. 2003)("the Court recognized in *Bond v. Floyd* that representative democracy requires that we provide legislators broad freedom of speech."); *Wilson v. Houston Cmty. College Sys.* 955 F.3d 490, 497(5th Cir. 2020)("we emphasize that the role that elected officials play in our society makes it all the more imperative that they be allowed to freely to express themselves on matters of public importance.").

### E. Circuit Courts Have Greatly Diminished the Protection Afforded an Elected Officials Speech Against Retaliation

*Bond* is the controlling authority in this case because Ms. Collins was not in politics when she exercised her First Amendment Right to speech.  She was not entangled in "petty political bickering" in the context of electoral politics. Rather, she was a private, non-elected official. She was a protective concern parent. Circuits have attempted to sidestep *Bond's* holding which otherwise unequivocally afforded an elected official a heightened protection for speech when faced with retaliation by fellow elected officials. The rationale for undermining *Bond* is that essentially electoral politics relies upon the rough and tumble undermining and backbiting of opposing points of view that result in actions that can conceivably be construed as retaliatory. Ms. Collins' case is not within the ambit of the line of cases involving "rough and tumble undermining and backbiting of opposing points of views…" At the time Ms. Collins tweeted pursuant to her First Amendment

Right, she was not "opposing" any Board member's "political point of view." She had no knowledge of the point of views of the members of the Board. She was making rhetorical social commentary regarding a broad compelling need for all, particularly the Asian community, to vocally express unification against racism.

While this Court is clearly bound by Supreme court precedent, it is also beholden to the Ninth Circuit. While the Ninth Circuit's holding in *Blair v. Bethel Sch. Dist.* purports to speak as the authority on the level of protection afforded an elected official when retaliated against for exercising speech on a matter of public concern by fellow elected officials, *Blair*, as well as the entirety of Circuit court cases that have relied on *Blair* is fundamentally factually inapposite to the facts at bar given the rationale supporting the courts position.

1.   **The Rationale for Refusing to Protect the Speech of Elected Officials is that the Give-and-Take of Electoral Politics Condones and Relies Upon Retaliation**

Given that the rationale for refusing to protect an elected official's speech from retaliation by their fellow elected officials is that retaliation is merely part and parcel of an elected officials' engagement in electoral politics, it is imperative that a plaintiff's speech took place while he or she was in fact an elected official, and thus, in the position of actually engaging in the give-and-take of squabbles of hardball politics, *Werkheiser,* 780 F.3d at 181 and "petty political bickering[s] through the adoption of legislative resolutions." *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994).

In fact, in every case involving an elected official seeking redress for First Amendment retaliation against fellow elected officials, the plaintiff had exercised his or her speech while seated and engaged in his or her elected office. See, *Blair*, 608 F.3d at 540(speech in opposition to school superintendent while seated as an elected school board member); *Werkheiser,* 780 F.3d at 156(speech opposing an appointee while seated on Township's Board of Supervisors); *Zilich*, 34 F.3d at 359(speech in opposition to Mayor while seated as a City Council member); *Wilson v. Houston Cmty. College Sys.* 955 F.3d 490, 496-500(5th Cir. 2020)(speech raising Board of Trustee violations while seated as an elected Board Trustee).

2.   **Ms. Collins' Speech was Exercised Outside the Give-and-Take of Electoral Politics When She was a Private Citizen**

Here, Ms. Collins has alleged that the speech upon which her fellow elected officials relied on in publicly condemning her professional character and stripping her of her leadership and committee positions on the school board was uttered some two years prior to her election to the school board. Her Twitter posts occurred in 2016 when she was a private citizen parent advocating for equitable educational opportunities for her children and the children of Black and Latino families residing within the school district. (Dkt.1 "Complaint" ¶¶2,13.) Thus, at the time Ms. Collins exercised her protected First Amendment speech, she was a private citizen and as such as argued above, was afforded more heightened protection than she is subsequently afforded as an elected official. Given that Ms. Collins' speech was exercised when wearing the 'hat' of a private citizen and not an elected official, the quantum of protection that her speech warrants must be evaluated under the more heightened standards applicable to a private person.

As a proper determination of the category under which a person exercises his or her speech is imperative in order to ascribe the proper standard of review and quantum of protection afforded, here, Ms. Collins' speech must be evaluated under the appropriate standard for speech of a private citizen.

a.   **Ms. Collins' has Sufficiently Alleged a Prima Facie Claim for First Amendment Retaliation against Private Speech**

To establish a First Amendment retaliation claim, a non-prisoner, non-government employee private citizen plaintiff must show that (1) he or she engaged in constitutionally protected speech; (2) the defendants' actions 'would chill a person of ordinary firmness from continuing to engage in the protected activity'; and (3) the protected activity was a substantial or motivating factor in the defendants' conduct." *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006).

Here, Ms. Collins has more than set out factual allegations that her December 2016 Twitter posts, whose subject matter focused on community relations and solidarity between parents of African American and Asian American children attending school in the district and that derived from comments made at a November 2016 SFUSD board meeting, were unequivocally

constitutionally protected speech. (Dkt.1 "Complaint" ¶¶ 2, 3, 5, 39, 42-46) *Connick,* 461 U.S. at 146 (constitutionally protected speech includes matters of public concern, i.e., "any matter of political, social or other concern to the community.")

Defendants' actions, i.e., drafting and passing a School Board resolution that was publicly disseminated that censured and effectively condemned Ms. Collins' character essentially labeling her a racist would categorically "chill a person of ordinary firmness from continuing to engage in the protected activity." Complaint, 11, 50, 51, 52, 54, 92; *see Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir. 1999)(formal reprimands qualify as adverse employment actions and, when given in retaliation for First Amendment activity, are actionable); *Laird v. Tatum,* 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)(adverse action having the effect of punishing someone for his or her speech); *Brodheim v. Cry,* 584 F.3d 1262, 1274 (9th Cir. 2009) (whether retaliatory acts would deter a person of ordinary firmness from speaking is a question of fact for the jury).

Lastly, here Ms. Collins has more than sufficiently alleged that her protected activity, i.e., 2016 Twitter posts were a substantial or motivating factor in the Defendants' conduct, i.e., public condemnation where Defendant Board members made explicit reference to Ms. Collins' statements in their Board Resolution No. 213-25A1, March 25, 2021, which effectively publicly labeled her a racist. Defendant Board members declared:

> "WHEREAS the inflammatory statements made by Commissioner Collins towards the Asian American community in 2016 perpetuate gross and harmful stereotypes and leave no room for nuance or potential misunderstanding; WHEREAS, when the social media comments resurfaced, what mattered most was that she, as a leader and elected official, accept responsibility and atone for the trauma inflicted on the community by her words."

### b. As the Level of Protection Afforded Speech must be Based Upon the Status of the Speaker when spoken, Ms. Collins' Speech as a Private Citizen is Afforded the Highest Protection

When prosecuting Ms. Collins' First Amendment retaliation claim from the perspective of the rights and protections afforded her as a private citizen, the above analysis makes plain that she has sufficiently set out a factual basis for alleging a prima facie claim for First Amendment retaliation under the U.S. constitution. Such an analysis is most reasonably proper in order to

conform the appropriate and required level of protection with the status of the speaker when she exercised her right. Given that Ms. Collins spoke as a private citizen when she spoke on matters of public concern in 2016, this Court should evaluate the appropriate level of protection that a private citizen would be legally afforded.

**F.     Were Ms. Collins' Twitter Posts Construed as Elected Official Speech, the Standards under *Blair v. Bethel School Dist.* are Not Met Given the Facts and Circumstances at Bar**

Nevertheless, were this Court to reject Ms. Collins' application of a 'private citizen' standard when evaluating her First Amendment retaliation claim, then Ms. Collins' claim as an elected official remains sufficiently alleged when comparing her factual allegations with the standards set out by the Ninth Circuit in *Blair v. Bethel Sch. Dist.*,

In *Blair*, a publicly elected former vice president of the public schoolboard brought a First Amendment retaliation claim against the school district, the district's superintendent, and the board's president alleging that he was removed as the board's vice president in retaliation for exercising his First Amendment rights. As an outspoken critic of the school district's superintendent, plaintiff voiced his criticism of the superintendent to a newspaper after his school board peers voted to extend the superintendent's contract and increase his pay. Following this statement, his peer school board members voted to remove the plaintiff from his position as vice president of the school board.

In applying the legal standard for a First Amendment retaliation claim, the Ninth Circuit found that plaintiff's speech was clearly protected by the First Amendment, and that there was a causal link between the plaintiff's speech and the board's retaliatory action. 608 F.3d at 543.

The Ninth Circuit then noted that if the case was a typical First Amendment retaliation case, the court would be left to determine only whether the Board's action would have chilled a person of ordinary firmness from speaking out. *Id.* However, the Ninth Circuit determined that the case before it required application of a different standard given that plaintiff was an elected official.

Primarily, the court deemed that the adverse action taken against the plaintiff, i.e., removal from the board's vice presidency position was merely a "minor indignity and de minimis deprivation of benefits and privileges," *Id.* at 544 such that it didn't offend the First Amendment

as it wouldn't stifle someone from speaking out. *Id.* Ms. Collins' Removal From her Post as Board Vice President and Committee Assignments were Not "de minimis depravations of benefits and privileges" because, unlike in *Blair*, she was punished for speech before any "benefit and privileges" were bestowed upon her as an elected official. She was punished for speaking as a concerned citizen for the welfare of her child's self-image and that of all children to be free of racism in the school environment. The deprivation of her elected position was an irreparable injury, slandering her good name and reputation, and depriving her of the ability to represent her constituents.

Nevertheless, given the principle of "deciding constitutional questions only in the context of the particular case before the Court," *Sweatt v. Painter,* 339 U.S. 629, 631, 70 S. Ct. 848, 94 L. Ed. 1114 (1950) Ms. Collins has sufficiently set forth allegations, both in her complaint and in her Order to Show Cause seeking injunctive relief, that removal from the 'titular' position of Board vice president was by no means 'a minor indignity and de minimis deprivation,' *Blair*, 608 F.3d at 544 but rather was indispensable to fulfilling her mandate to her constituency and partaking in her role as Commissioner.

Ms. Collins has alleged that her removal from serving as Board vice president has precluded her ability to effectively serve her constituency as she could no longer attend joint S.F. City Council and S.F. Board of Education meetings where she was otherwise able to advocate and advance philanthropic investment in public school which is a major component for vitalizing her constituencies school infrastructure and programming. OSC p. 9:15-21.

Likewise, Ms. Collins is now precluded from reviewing the Board's agenda and chairing committee meetings which excludes her voice and the interests of her constituency in shaping the district's priorities, OSC p. 9:22-27. As the vice-president is next in line for assuming the role of president, Ms. Collins' has also been stripped of that very propitious opportunity. OSC, p. 10:1-16, 10:21-27.

Prior to her removal from the vice-presidency, Ms. Collins worked hand in hand with President Gabriela Lopez to affirmatively addressing racial justice and advocating for their Black and Brown district constituent families. OSC, p. 11:17-28. Similarly, as a Black mother and

educator, Ms. Collins' leadership role provided a representation that her constituents have been seldom, if ever, able to benefit from. OSC, p.12:4-8.

Thus, Defendants stripping away Ms. Collins' seat as vice president and ability to participate in Board committees was not "a discouragement that was "minimal" and "wholly subjective," but was fundamental in Ms. Collins' ability to perform her elected responsibilities and hence, to exercise her free speech rights. *Cf. Westfall v. City of Crescent City* 2011 U.S.Dist.LEXIS 57353, at *15(N.D.Cal. May 26, 2011).

1. **Defendants' Retaliatory Actions of Removing Ms. Collins from her Post as Board Vice President and Committee Assignments Detrimentally interfered with Her Ability to Adequately Perform Her Elected Duties**

Similarly, due to an erroneous reading of Bond, the Ninth Circuit in Blair held that the Supreme Court sided with petitioner because defendants' refusal to seat him would have resulted in nullifying a popular vote. *Blair*, 608 F.3d at 545 n. 2. Despite the fact that the Supreme court in Bond had made no such assertion, Ms. Collins' declaration in support of her Order to Show Cause plainly sets out that, given the interrelationship between Ms. Collins undertaking the role of Board vice president and her ability to fulfill her duties and promises to her constituency, the removal of the vice president position has had the practical effect of 'unseating' Ms. Collins as a Commissioner.

Such result fully supports the well-established exception to the standard that elected officials are without protection against retaliation by their colleagues. Thus, the First Amendment prohibits retaliation against elected officials for speech when the retaliation interferes with their ability to adequately perform their elected duties. *Werkeiser*, 780 F.3d at 181; *Blair,* 608 F.3d at 545 n.4("depriving an elected official] of authority he enjoyed by virtue of his popular election.")

"To be considered impermissible, such retaliation would have to cross the line to actual interference with the person's function as an elected official. When that occurs, the rules of the democratic political contest have been subverted, and it cannot no longer be presumed that the outcomes are legitimate." *Greenman v. City of Hackensack,* 486 F. Supp. 3d 811, 827(D.N.J. 2020); *see also, Peeper v. Callaway County Ambulance Dist.* 122 F.3d 619, 623(8th Cir. 1997)(restrictions on an elected officials participation in the elected offices official functions

necessarily violate the elected officials First Amendment associational rights while also infringing upon voters' rights to be represented).

Here, in her Order to Show Cause, Ms. Collins has sufficiently alleged that being stripped of the role of vice president and partaking in the Board's committees, Ms. Collins' ability to adequately perform her elected duties has been significantly impaired. OSC p. 9:15-21; p. 9:22-27; p. 10:1-16, 10:21-27; p. 11:17-28; 12:4-8.

As the above analysis fully supports, the fact that Ms. Collins' removal from both her vice-presidency post and Board committee positions cannot simply be construed as a 'minor indignity' and 'de minimis deprivation,' *Blair,* 608 F.3d at 544 and that such removal fundamentally 'interfered' with Ms. Collins' function as an elected official, *Werkeiser*, 780 F.3d at 181; *Blair,* 608 F.3d at 545 n.4, the dictates affirmed in *Blair* that an elected official is without First Amendment protection are inapplicable to the circumstances at bar.

Ms. Collins has sufficiently alleged a constitutional right to speak freely on a matter of public concern without being subjected to retaliation such that Ms. Collins has sufficiently alleged a constitutional right for purposes of defeating qualified immunity and a prima facie claim for Section 1983 First Amendment Retaliation.

## III.   Ms. Collins' Right to be Free From Retaliation for Exercising her First Amendment Right is Clearly Established Such that Defendants are Precluded from Invoking Qualified Immunity

In § 1983 actions, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). To determine whether qualified immunity applies, we ask whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was "clearly established" at the time of the conduct at issue. *Wilk v. Neven,* 956 F.3d 1143, 1148 (9th Cir. 2020).

A constitutional right is "clearly established" if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct. *Taylor v. Barkes,* 575 U.S. 822, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015). Thus, courts inquire "whether the state of

the law [at the time of the officials' conduct] gave [them] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). In determining fair notice, courts do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Barkes*, 575 U.S. at 822. Officials can still be on notice that their conduct violates established law even in novel factual circumstances" where there are no prior cases with "fundamentally similar" or "materially similar" facts. *Hope,* 536 U.S. at 741.

Here, as argued extensively above, by expressly relying on Ms. Collins' speech as grounds for public censure and removal from leadership and committee positions, Defendants violated Ms. Collins' First Amendment right to protected speech. Again, given the broad protection afforded her when she spoke as a private citizen/parent on matters of public importance regarding the racial inequities and discriminatory undertakings occurring within the school district, Defendants' reliance on such speech as grounds for retaliation clearly evoked and violated Ms. Collins' First Amendment rights. *See, Connick*, 461 U.S. at 145(speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection). Thus, Ms. Collins sufficiently alleged a violation of her First Amendment right.

As of the date that Defendants first learned of Ms. Collins' Twitter posts, a reasonable elected official in Defendants' shoes would have known that retaliating against a private citizen for speech of public concern was patently unconstitutional as it was clearly established at the time of Defendant's conduct. Retaliation for engaging in protected speech has long been prohibited by the First Amendment. *See, Pinard,* 467 F.3d at 770. Defendants were well apprised that Ms. Collins' speech was uttered when she was a private person and thus should have been afforded a level of protection commensurate with that status.

Similarly, in regard to the protection of an elected official's speech, it has been well established that an elected official's speech is given "the widest latitude to express views on issues of policy" without being subject to retaliation" as 'debate on public issues should be uninhibited, robust, and wide-open." *Bond*, 385 U.S. at 135-37. Thus, when knowing that Ms. Collins's twitter posts were drafted two plus years prior to her election to the Board and that Board members were

afforded broad latitude in expressing their views on public policy, a reasonable commissioner in Defendants' shoes would have reasonably refrained from hastily drafting and passing a resolution censuring Ms. Collins and stripping away her Board postings expressly on account of her speech.

It was also equally well established that the First Amendment prohibits retaliation against elected officials for speech when the retaliation interferes with their ability to adequately perform their elected duties. *Blair,* 608 F.3d at 545 n.4("depriving an elected official] of authority he enjoyed by virtue of his popular election."); *Werkeiser,* 780 F.3d at 181; *Zilich,* 34 F.3d at 363. Here, a reasonable elected official in Defendants' shoes would have known that a leadership position endowed with the authority to set Board agendas and knowing that, as vice-president, Ms. Collins was working hand in hand with the Board's President in carrying out projects that would benefit historically overlooked communities and students of color was by no means a de minimis position but one that was integral in Ms. Collins' ability to accomplish and fulfill her elected duties. See, supra, (cite to page setting out advantages of vice presidency)

The same holds true for removing Ms. Collins' ability to partake in the Boards committees. Having been stripped of her ability to serve on the Board's committees, Ms. Collins' particular voice that very much reflected her constituency was immeasurably silenced such that she was patently unable to fulfill her elected duties. OSC, p.12:26-13:8. It is without question that such duties involve the ability to engage in the give and take of introducing policies and programs that provide benefits to the constituency who entrusted their representation to the elected official. OSC, p.12:9-15. Without an ability to partake in the introduction of policy and project endeavors nor an ability to assess and craft such endeavors with her electorate's interests in mind, Ms. Collins' ability to carry out her role and mandate as a commissioner has been categorically squelched.

Thus, the mere ability to cast votes on policies and projects cannot be construed as 'fulfilling one's elected duties.' Without having the opportunity to partake in their formulation, definition and final form, Ms. Collins cannot advocate and represent her constituents' interests. As such, Defendants' retaliatory actions have precluded Ms. Collins from the opportunity of carrying out and performing the duties that would permit her to sufficiently represent the interests of the constituency that elected her. *Werkeiser,* 780 F.3d at 181; *Blair,* 608 F.3d at 545 n.4.

Given that the law was clearly established with respect to both the distinction between the level of protection afforded speech of a private citizen and an elected official, as well as the permissible quantum of 'retaliation' afforded an elected official, Defendants are reasonably precluded from relying on qualified immunity in order to evade their well-deserved liability for violating Ms. Collins' unqualified and protected right to speak on matters of public concern.

**IV.   Ms. Collins Has Sufficiently Alleged a Fourteenth Amendment Liberty Interest in both her Good Name and Reputation, as well as Her Interest in Freedom to Work and Earn a Living.**

The Supreme Court has recognized a constitutionally protected interest in "a person's good name, reputation, honor, or integrity." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971). As such, it has formulated a standard, known as the "stigma-plus" test, to determine whether reputational harm infringes a liberty interest. *Paul v. Davis,* 424 U.S. 693, 711, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

A stigma-plus claim exists where a plaintiff alleges that the state "makes a charge against [a plaintiff] that might seriously damage her standing and associations in the community," and "1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the alteration of some right or status recognized by state law." *Llamas v. Butte Community College Dist.,* 238 F.3d 1123, 1129 (9th Cir. 2001).

The liberty interest protected by the Due Process Clause "encompasses an individual's freedom to work and earn a living." *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 907 (9th Cir. 1993). To state a claim that governmental action deprived a plaintiff of the right "to engage in any of the common occupations of life," a plaintiff must allege the government "took steps or made charges that so severely stigmatized the employee that she cannot avail herself of other employment opportunities." *Hyland v. Wonder,* 972 F.2d 1129, 1141 (9th Cir. 1992). Under the "plus" prong, a plaintiff can show he has suffered a change of legal status if he "legally [cannot] do something that [he] could otherwise do." *Miller v. Cal.,* 355 F.3d 1172, 1178-79 (9th Cir. 2004).

Here, Ms. Collins has alleged that the accuracy of Defendants' interpretation of the meaning of Ms. Collins' tweets was very much in doubt, considering that the interpretation unjustly imposed a judgment that Ms. Collins was a racist. Given that the entirety of Ms. Collins'

professional life centered on eradicating racism and discriminatory inequities in education, such designation can rightfully be construed as 'severely stigmatizing' such that her ability to avail herself of future employment opportunities in her field of educational equity has been been fundamentally obliterated. Complaint, 11, 38, 50, 51, 52, 54, 92, OSC, 15:16-17; *Foretich v. United States,* 351 F.3d 1198, 1211, 359 U.S. App. D.C. 54 (D.C. Cir. 2003)(it is beyond peradventure that being publicly censured by elected officials colleagues concretely and particularly harms a elected officials reputation).

While Ms. Collins might, in fact, be endowed with a statutory interest in serving as an elected official, see, *Collins v Morris* 263 Ga. 734 438 S.E.2d 896 (1994)("Recall act unconstitutionally deprives an elected official of the official's property right in the office without due process of law") a fundamentally protected interest exists in her ability to implement the interests of the voters of San Francisco who, upon exercising their rights of political franchise, relied upon Ms. Collins to represent their interests. Defendants' retaliatory acts effectively stripped away the fundamental conditions that permitted Ms. Collins to sufficiently represent the interests of her constituency, and thereby have violated statutory protections that protect the integrity of representational government.

Ms. Collins has sufficiently pled factual allegations that support her Fourteenth Amendment liberty interest in her 'good name, reputation, and honor' and 'freedom to work and earn a living."

**V.    Ms. Collins Has Sufficiently Alleged a Fourteenth Procedural Due Process Claim**

Defendants similarly violated Mc. Collins' right to procedural due process when as alleged, the Board patently failed to follow its own administrative rules pertaining to calling a meeting of the Board, as well as complying with time frames for notice and debate prior to calling for a vote. See Complaint, 55, 57-59, OSC, 6-7:20; see also, *Wilson v. Robinson,* 668 F.2d 380, 382-383 (8th Cir. 1981)(a government agency's failure to follow its own ordinances or regulations may constitute a deprivation of property without due process).

Additionally, given the content of the Board's Resolution which categorically eviscerated Ms. Collins' reputation, as well as the public ramifications of the Resolution, a name-clearing

hearing was required as Defendants' resolution publicly and expressly disclosed 'stigmatizing information regarding the reasons for [Collins'] discipline. *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). While an individual's substantive due process liberty interest is implicated when he or she incurs disciplinary action that impairs and diminishes his or her reputation and thus otherwise requires an opportunity for name clearing, *Mustafa v. Clark Cnty. Sch. Dist.,* 157 F.3d 1169, 1179 (9th Cir. 1998) a failure to provide a 'name-clearing' hearing in such a circumstance is a violation of the Fourteenth Amendment's procedural due process. *Cox*, 359 F.3d at 1110.

Here, Ms. Collins' procedural due process rights were violated on two fronts where the Board intentionally dispensed with following its procedural rules for introducing and voting on its censure resolution, Complaint, 55, 57-59,  OSC, 6-7:20 and thereafter, failed to provide Ms. Collins with a name-clearing hearing as her rights under the Fourteenth Amendment guarantee her.

## VI.   Ms. Collins Has Sufficiently Alleged a State Claim of Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress may rest upon outrageous conduct by the defendant which is in "reckless disregard" of the probability of causing emotional distress. There does not have to be an intent to cause such distress. *See Newby v. Alto Riviera Apartments 60 Cal. App. 3d 288 (1976)*; *Marina Point, Ltd., v. Wolfson* 30 Cal.3d 721, 740-741, fn. 9(1982). "A defendant's conduct is in reckless disregard of the probability of causing emotional distress if he has knowledge of a high degree of probability that emotional distress will result and acts with deliberate disregard of that probability or with a wanton disregard of the possible results." BAJI No. 12.77 (6th ed. 1977). Generally, intentional infliction exists where an average member of the community would arouse his resentment against the defendant, leading him to exclaim, 'Outrageous! 1 Restatement (Second), Torts § 46, cmt. d (1965).

Here, Ms. Collins has more than sufficiently alleged that Defendants, while well aware of the political climate existing with a rise of anti-Asian violence, exacerbated an already volatile situation by issuing an incendiary public censure of Ms. Collins which, given the language of the repudiation, branded her a racist that fanned the flames of media attention. Such conduct clearly rises to a wanton, reckless disregard of the probability that Defendants' conduct would cause Ms.

1   Collins emotional distress. Ms. Collins has sufficiently alleged a prima facie claim for intentional

2   infliction of emotional distress.

3   **VII.   As the Question of Whether State Law Conceives of an Elected Official as an Employee has Not Been Categorically Foreclosed, Ms. Collins' State Claims That Require Employment Status Have Been Sufficiently Alleged**

4

5          To the extent that Ms. Collins' levies state claims and rights that are conditioned on holding

6   the status of an 'employee,' the question of whether state law conceives an elected official as an

7   employee has not been categorically foreclosed. For example, under both California and federal

8   law, elected officials are considered employees for tax withholding purposes. See 26 U.S.C. §

9   3401(c); Cal. Un. Ins. Code § 1279. Thus, payroll taxes must be withheld from officials' salary.

10  Additionally, elected officials and board members working in their official capacity are also

11  employees for the purpose of obtaining workers' compensation coverage. Cal. Labor Code § 3351.

12         For purposes of Ms. Collins' derivative State claims for negligence under Government

13  Code section 815.2(fifth cause of action), violation of procedural due process under Skelly (sixth

14  cause of action), and retaliation under California Labor Code § 1102.5 (seventh cause of action),

15  Ms. Collins, as a member of the school board, can reasonably be construed as an 'employee' such

16  that she has sufficiently alleged prima facie claims for the above three causes of action.

17                                     **CONCLUSION**

18         As the foregoing argument and analysis makes plain, Plaintiff Alison Collins respectfully

19  requests that this Court deny the instant Motion to Dismiss or in the alternative, grant Ms. Collins

20  leave to amend.

21

22

23  **Dated: June 18, 2021**                    **RESPECTFULLY SUBMITTED,**
                                                 **LAW OFFICES OF BONNER & BONNER**
24

25                                               /s/*Charles A. Bonner*
                                                 Charles A. Bonner
26
                                                 **Attorney for Plaintiff**
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          4:21-cv-02272-HSG

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on this 18th of June, 2021, I electronically filed the foregoing documents:

3

**DOCUMENT(S):**

4

5    **PLAINTIFF ALISON COLLINS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

6

7    with the Clerk of the Court using the CM/ECF system.

8         I also certify that all participants in the case are registered CM/ECF users and that service

9    will be accomplished by the CM/ECF system.

10        Served and executed this 18th Day of June, 2021.

11

12

13                                    _/s/ Charles Bonner_
                                      Charles Bonner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS              4:21-cv-02272-HSG