CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER &
BONNER**
475 GATE FIVE ROAD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

Howard Moore, Jr., Esq. (SBN 55228)
**MOORE & MOORE**
1569 Solano Avenue, #204
Berkeley, CA 94707
Tel: (510) 542-7172 / Fax: (510) 528-3024
Email: moorlaw@aol.com

David C. Anderson
LAW OFFICES OF DAVID C. ANDERSON
591 Redwood Hwy., Bldg. 4000
Mill Valley, CA 94941-3039
Phone: (415) 395-9898
Facsimile: (415) 395-9839
Email: cynthia@dcandersonlaw.com

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| ALISON COLLINS, | Case No.:  **4:21-cv-02272-HSG** |
|---|---|
| Plaintiff, | **PLAINTIFF ALISON COLLINS OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** |
| vs. | |
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al., | Date:  Thursday, August 19, 2021 Time:  2:00 PM Courtroom:  Courtroom 2 – 4th Floor Judge:  Honorable Haywood S. Gilliam, Jr. |
| Defendants. | |

1

2

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ........................................................................**Error! Bookmark not defined.**

STATEMENT OF FACTS .................................................................................. 1

LEGAL ARGUMENT ........................................................................................ 4

   I.     DEFENDANTS SECTION 425.16 MOTION TO STRIKE IS UNAVAILING AS MS. COLLINS STATE CLAIMS WERE NOT BASED UPON THEIR PROTECTED SPEECH RIGHTS. ........................................................................................................... 4

     A.   Given the California Legislature's Intention for Imposing Sanctions under Section 425.16, the Facts at Bar Foreclose its Application. ................................................. 4

     B.   Defendants Are Unable to Show that they 'Acted in Furtherance of their Right to Petition or Free Speech.' ........................................................................................ 5

     C.   Ms. Collins' State Claims Did not "Arise' on Account of Defendants' Protected Speech 7

   II.    Claim for Intentional Infliction of Emotional Distress .................................. 8

   III.   Claims for Negligence, Skelly Violation, and Retaliation under California Labor Code § 1102.5 ......................................................................................................... 9

CONCLUSION ................................................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 ............................................................. 7, 8

*Briggs v. Eden Council for Hope & Opportunity* 19 Cal.4th 1106, 1129 (1999) ............. 4

*Church of Scientology v. Wollersheim* (1996) 42 Cal. App. 4th 628, 645 ..................... 4

*City of Montebello v. Vasquez* 1 Cal.5th 409, 423 (2016) ..................................... 5, 6, 8

*ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993, 1002(2001) ............................. 7

*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279 .............................................. 7

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002) ............................ 6

*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312 ................................................. 4, 9

*Flatley v. Mauro* 39 Cal.4th 299, 317 (2006) ........................................................... 6

*Gallimore v. State Farm Fire & Casualty Ins. Co.* 102 Cal.App.4th 1388 (2002) ........... 8

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* 181 Cal.App.4th 1207, 1214-2115

   (2010) ............................................................................................................ 8

*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 ...................... 6

*Navellier v. Sletten* 29 Cal.4th 82, 94 (2002) ......................................................... 6

*Nevada Comm'n on Ethics v. Carrigan* 564 U.S. 117 [180 L. Ed. 2d 150, 131 S.Ct. 2343, 2350]

   (2011) ......................................................................................................... 5, 6

*Park v. Board of Trustees of California State* University (2017) 2 Cal.5th 1057, 1063. .............. 7

*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396 .. 7

*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.*

   125 Cal.App.4th 343, 353-359(2004)(" ................................................................ 8

***Skelly v. State Personnel Bd.* , 15 Cal.3d 194** ..................................................... 9

*United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171

   Cal.App.4th 1617, 1628(2009) ........................................................................... 7

*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 ............................ 3

*Wilcox v. Superior Court* 27 Cal. App. 4th 809, 815-816 (1994) ............................... 3, 4

1

**Statutes**

2
Cal. Labor Code § 3351 ............................................................................................................... 9

3
Cal. Un. Ins. Code § 1279 ........................................................................................................... 9

4
California Labor Code § 1102.5 ................................................................................................... 9

5
Code of Civil Procedure Section 425.16.............................................................................. passim

6
Government Code section 815.2 .................................................................................................. 9

7

**Other Authorities**

8
Sen. Bill No. 1264 (1991–1992 Reg. Sess.) ................................................................................ 4

9
Stats. 1992, ch. 726, § 2, pp. 3523–3524 .................................................................................... 4

10

**Constitutional Provisions**

11
First Amendment ..................................................................................................................... 6, 8

12
Fourteenth Amendment ............................................................................................................... 7

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2

On March 24, 2021, DEFENDANTS took illegal actions to punish PLAINTIFF ALISON

3

COLLINS ("MS. COLLINS), in violation of MS. COLLINS' First Amendment Rights of free

4

speech, for a series of tweets published on December 4, 2016, nearly four and one-half years ago

5

when MS. COLLINS was a private, non-governmental employee.

6

On March 24, 2021, DEFENDANTS drafted a "Resolution" to remove Commissioner

7

PLAINTIFF ALISON COLLINS ("MS. COLLINS) from her position as Vice-President of the

8

San Francisco School Board, and upon giving 24 hours' notice, on March 25, 2021, voted 5-2

9

passing that "Resolution", stripping PLAINTIFF ALISON COLLINS of her vice-president

10

position and membership on all committees.

11

Predictably, like all wrong doers, DEFENDANTS seek to escape accountability by

12

bringing their ill-conceived motion to strike, which, as compelled by the facts, law and equity,

13

must be dismissed.

14

**STATEMENT OF FACTS[1]**

15

As a parent of two mixed race children who attended public school within the San

16

Francisco Unified School District, Plaintiff Alison Collins ("Ms. Collins") was horrified at

17

having to accept that every day her children's safety, as well as the safety of other Black and

18

Latino children in the school district, were at risk and that the other so called minority voices in

19

the District were not only ignoring the situation but exacerbating it by drawing distinctions

20

between their children and the Black and Latino children. Collins Complaint, dated March 31,

21

2021("Complaint") 3, 42.

22

Rather than silently sit idly by and accept that inequities, racism and discrimination are

23

immutable and simply a part of the fabric of the City of San Francisco, Ms. Collins actively

24

engaged in working to change the system to make a safer and more inclusive world for her

25

children. Complaint, 4, 43-46. Upon the election of Donald Trump and his explicit embracement

26

of white supremacy and exclusion, Ms. Collins, with increased urgency of having to take action

27

---

28

[1] MS. COLLINS incorporate all facts stated in her Complaint for Damages (Dkt.1) and in her Motion for an Order to Show Cause (Dkt.23) as though fully set forth herein.

to ensure the safety of her children and the other Black and Latino children in her community, affirmatively spoke to the need of unifying all the 'minority' voices in her school district with the hopes of mounting a unified resistance to stemming further encroachment of white supremacy.

As a means furthering this message, Ms. Collins utilized social media, in particular Twitter, to speak directly to the community and articulate her concerns with infighting and otherwise lack of solidarity amongst the various communities in the school district. On December 4, 2016, Ms. Collins spoke to these issues on Twitter which subsequently served as the motivation for Defendants to take the actions and ensuing harms that form the basis of Ms. Collins instant lawsuit. Complaint, 2.

Nevertheless, Ms. Collins' advocacy and commitment to bringing about just and equitably inclusive educational opportunities for all students increased leading her to run for a Commissioner seat on the S.F. School Board. Thus, in November 2018, Ms. Collins was elected to the S.F. School Board with a plurality of the votes cast. During her term, Ms. Collins followed through with the promises she made to her constituency in bringing more policies of inclusivity into the district. One such policy initiative was to open the enrollment status of several of San Francisco's exclusive public high schools, in particular Lowell High School where Black and Latino students have been grossly underrepresented. Complaint 47. It is particularly Ms. Collins' advocacy on this issue that incited the retaliation that Ms. Collins had come to incur.

Such indeed came to pass when on or about March 2021, Ms. Collins' December 2016 Twitter posts that were drafted prior to her election to the school board and when still a private citizen parent wherein Ms. Collins' levied criticisms upon the school district's Asian-American community's refusal to join in solidarity with the Black and Latino students in seeking equity and fairness within the school district. Complaint 2. As Ms. Collins' 2016 'tweets' were unearthed in or around February 2021 at a time when San Francisco and the United States was seeing a spike in anti-Asian violence and racism, the response to Ms. Collins' posts were met with virulent and impassioned fervor. Complaint, 53. 54. Immediately, Defendants and the community (and world!) at large, clamored for an immediate judgment that Ms. Collins' posts unequivocally racist and reflexively worthy of punishment.

This in fact occurred with Defendants almost immediately requesting Ms. Collins' resignation.  Complaint 51, 53, 54. The call for Ms. Collins' resignation resounded across social and conventional media, both nationally and worldwide. Complaint, 8, 38, 50.

On March 20, 2021, Ms. Collins made a formal apology acknowledging the correlation between her Twitter posts and the rise in Anti-Asian violence acknowledging that her 2016 were made within a particular time, place and context and within the shadow of Donald Trump's racism and anti-immigration agenda. Ms. Collins took full responsibility for her posts and apologized for the pain that they have caused. She reiterated that she had reached out to the leaders of the Asian American community in San Francisco and stood in solidarity with them and their community. Complaint, 5.  Three days later, Ms. Collis publicly apologized during a Board of Education meeting. Complaint, 6.

In disregarding Ms. Collins' apology, on March 24, Defendants sought to expedite Ms. Collins' resignation by drafting a resolution censuring Ms. Collins and publicly requesting her resignation. Complaint, 11. Were Ms. Collins to refuse to resign, the resolution additionally removed Ms. Collins from her Board vice president post, as well as the entirety of her Board committee assignments. Complaint, 55. In haste and dispensing with proper Board rules and protocol for bringing a resolution to vote, Complaint, 55, 57 Defendants voted on March 25, 2021, to take up the resolution to censure Ms. Collins and remove her from her post as Board vice president and all committee assignments. Complaint, 59. The resolution was passed by a vote of 5-2 with both Ms. Collins and Board President Gabriela Lopez casting the two nay votes. Complaint, 60.

As such, by stripping away Ms. Collins' post of Board vice president and the entirety of her committee assignments as a knee jerk retaliatory response to Ms. Collins' protected speech uttered prior to her assumption of her elected office, Defendants have patently violated Ms. Collins' rights which form the basis of her instant action.

1

## **LEGAL ARGUMENT**

2

**I.   DEFENDANTS SECTION 425.16 MOTION TO STRIKE IS UNAVAILING AS
3        MS. COLLINS' STATE CLAIMS WERE NOT BASED UPON THEIR
        PROTECTED SPEECH RIGHTS.**

4

**A.   Given the California Legislature's Intention for Imposing Sanctions under
            Section 425.16, the Facts at Bar Foreclose its Application.**

5

Code of Civil Procedure Section 425.16 ("Section 425.16") serves to expose and dismiss
6

meritless suits that seek to deplete a "defendant's energy" and drain "his or her resources" such
7

that the Legislature saw fit to prevent such suits from having a chilling effect on the valid
8

exercise of free speech and petition rights.[2] *Varian Medical Systems, Inc. v. Delfino* (2005) 35
9

Cal.4th 180, 192.
10

Characteristically, the SLAPP suits' aim is not to win the lawsuit but to detract the
11

defendant from his or her objective, which is adverse to the plaintiff. *Church of Scientology v.*
12

*Wollersheim* (1996) 42 Cal. App. 4th 628, 645; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-
13

312(legislative intent of § 425.16(a) is to prevent meritless lawsuits brought primarily to chill the
14

valid exercise of such First Amendment constitutional rights of a targeted party).
15

Here, by expounding the harms incurred on account Defendants' conduct, Ms. Collins'
16

Complaint can by no means be construed as withholding or secreting an intention "not to win"
17

but rather as a well-supported 'measure' to impede Defendants' all too transparent objective of
18

silencing Ms. Collins' voice in her attempt to implement changes to the long entrenched
19

systemic deprivation of inclusive opportunities for the underserved students of color throughout
20

the school districts of San Francisco.
21

22

23
_____

[2] "SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally
24    cognizable right of the plaintiff. Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. But
      lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to
25    tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. As long
      as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to
26    combat the plaintiff in the political arena is substantially diminished. The SLAPP strategy also works even if the
      matter is already in litigation because the defendant/cross-complainant hopes to drive up the cost of litigation to the
27    point where the plaintiff/cross-defendant will abandon its case or have less resources available to prosecute its action
      against the defendant/cross-complainant and to deter future litigation." *Wilcox v. Superior Court* 27 Cal. App. 4th
28    809, 815-816 (1994).

Thus, given that Section 425.16 is expressly intended and limited to those lawsuits "'brought **primarily** to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances,' *Wilcox v. Superior Court,* 27 Cal. App. 4th 809, 819 (1994)(emphasis added), Section 425.16's application to Ms. Collins' claims as articulated in her Complaint by no means comport with the Legislature's intention for permitting such actions. Sen. Bill No. 1264 (1991–1992 Reg. Sess.) enacted as Stats. 1992, ch. 726, § 2, pp. 3523–3524.

Given the clarity of intention underlying Ms. Collins' lawsuit in seeking redress for Defendants' express violation of her First Amendment, none of the Legislature's rationale and purpose for Section 425.16 are met here i.e., meritless suits brought primarily to obtain an economic advantage over defendants by tying up their resources, driving up their costs of litigation, and ultimately deterring the defendants from exercising their political or legal rights, or punishing them for doing so." *Briggs v. Eden Council for Hope & Opportunity* 19 Cal.4th 1106, 1129 (1999)("our task in this case is to construe the provisions of Section 425.16 in a manner that best comports with the carefully delineated purpose and intent behind the remedial legislation expressed in subdivision (a)).

Thus, as Defendants are unable to show that on its face, Ms. Collins complaint falls within any of the above enumerated purposes that expressly trigger the applicability of Section 425.16, Defendants' Section 425.16 Motion to Strike is facially deficient and must be denied.

**B.     Defendants Are Unable to Show that they 'Acted in Furtherance of their Right to Petition or Free Speech.'**

Defendants are additionally foreclosed from bringing a Section 425.16 Motion to Strike as they are unable to show that they in fact "acted in furtherance of their [right] of petition or free speech under the United States or California Constitution in connection with a public issue.' § 425.16(b)(1).

A legislator's vote and "acts of governance mandated by law, without more, are not exercises of free speech or petition." *Nevada Comm'n on Ethics v. Carrigan* 564 U.S. 117 [180 L. Ed. 2d 150, 131 S.Ct. 2343, 2350] (2011).

In *Carrigan*, a city council member challenged a Nevada law prohibiting a legislator who had a conflict of interest both from voting on a proposal and advocating for or against it, arguing

the law violated the First Amendment. *Carrigan*, 564 U.S. at p. 117-118 [131 S.CFt. at p. 2345].)
The United States Supreme Court held the restriction did not violate the legislator's right to free
speech because a legislator's voting power does not constitute speech. The Supreme Court
reasoned that because a legislator casts his vote as a political representative executing the
legislative process on behalf of his constituents, he has no personal right in his vote. *Carrigan*,
564 U.S. at p. 159 [131 S.Ct. at p. 2350].) A legislator's act of voting is therefore "conduct
engaged in for an independent governmental purpose," not an act of communication conveying
the legislator's personal message. Id. at pp.159–160 [131 S.Ct. at pp. 2350–2351].

Although the California Supreme court in *City of Montebello v. Vasquez* 1 Cal.5th 409,
423 (2016) held that *Carrigan* was not dispositive for purposes of Section 425.16 as the
California legislature included the provision "any act…in furtherance of" which the court
determined somehow addressed and placed outside of *Carrigan*'s holding. *Montebello*, at 423.
The court further determined that because the Legislature specified which actions constituted
activity protected by the constitutional rights of speech and petition, then "courts determining
whether a cause of action arises from protected activity are not required to wrestle with difficult
questions of constitutional law." *Id.* at 421.

However, the *Montebello* court very much failed to recognize that the foundational
underpinnings of Section 425.16 is to prevent suits primarily aimed at 'chilling the exercise of
First Amendment rights." *Navellier v. Sletten* 29 Cal.4th 82, 94 (2002). It is without question that
the term "First Amendment rights" as relied upon by the Legislature connotes those rights
endowed under the U.S. Constitution. As such, the *Montebello* court's refusal to apply the U.S.
Supreme court's holding that a legislator's voting power does not constitute First Amendment
speech, *Carrigan* 564 U.S. at p. 159 [131 S.Ct. at p. 2350] is very much a disregard of applying
controlling Supreme Court precedent.

As the State Supreme court in *Montebello* unreasonably applied precedent of the U.S.
Supreme court, *Carrigan* is controlling such that Defendants are unable to rely upon their act of
voting as protected speech when passing their unconstitutional March 29, 2021 resolution. A

1    legislator's act of voting is therefore "conduct engaged in for an independent governmental

2    purpose," *Carrigan*, 564 U.S. at p.159-160 [131 S.Ct. at pp. 2350–2351].)[3]

3        **C.    Ms. Collins' State Claims Did Not "Arise' on Account of Defendants'**
         **Protected Speech**
4
5        Nevertheless, were this Court to follow *Montebello* and find that Defendants had

6    rightfully exercised their speech and petition rights under the First Amendment for purposes of

7    relying upon Section 425.16, then, as the following arguments make plain, Defendants' are

8    unable to satisfy Cal. Code. Civ. P. §425.16's first requirement of showing that Ms. Collins'

9    state causes of action 'arose' from Defendants' speech.

10       In determining whether a challenged cause of action is one arising from protected

11   activity, *Equilon Enters. v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 (2002), the court must look

12   to the principal thrust or gravamen of the plaintiff's cause of action." *Martinez v. Metabolife*

13   *Internat., Inc.* (2003) 113 Cal.App.4th 181, 188, i.e., defendant's act underlying the plaintiff's

14   cause of action must itself have been an act in furtherance of the right of petition or free speech.

15   *ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993, 1002(2001). The "'meaning of

16   "gravamen" is clear; "gravamen" means the "material part of a grievance, charge, etc."

17   *Renewable Resources Coalition, Inc. v. Pebble Mines Corp*. (2013) 218 Cal.App.4th 384, 396. In

18   the context of the anti-SLAPP statute, the 'gravamen is defined by the acts on which liability is

19   based, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for

20   the claims. *Id.* at 396.

21       An action is **not** one arising from protected activity where allegations of the protected

22   activity are only incidental to the thrust of the complaint. *Dyer v. Childress* (2007) 147

23   Cal.App.4th 1273, 1279. 'Incidental to the thrust of the complaint' exists where the protected act

24   is not alleged to be the basis for liability, i.e., 'collateral' or merely exist to provide context,

25   without supporting a claim for recovery. *United States Fire Ins. Co. v. Sheppard, Mullin, Richter*

26   *& Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628(2009); *Baral v. Schnitt* (2016) 1 Cal.5th

27   ───────────────
     [3]   Additionally, Section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a
28   matter of law. *Flatley v. Mauro* 39 Cal.4th 299, 317 (2006). Here, Ms. Collins has affirmatively asserted that
     Plaintiffs' violated state law by intentionally failing to comply with Board rules and regulations when exercising
     their voting authority.

376, 394(where assertions exist to provide context, without supporting a claim, recovery is not subject to section 425.16 and thereby cannot be stricken).

In short, when ruling on a Section motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability. *Park v. Board of Trustees of California State* University (2017) 2 Cal.5th 1057, 1063. Here, as discussed above, Ms. Collins' lawsuit in seeks redress for Defendants' express violation of her First Amendment.  Accordingly, none of the Legislature's rationale and purpose for Section 425.16 are met.

## II.   CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Here, in alleging her state claim for Intentional Infliction of Emotional Distress, Ms. Collins alleged that:

> DEFENDANTS' intentional, conspiratorial, and deliberate indifference to MS. COLLINS' health, safety, reputation in the community, and by slandering her as a "Racist", dishonest, immoral person while depriving her of her constitutional rights is extreme and outrageous conduct. DEFENDANTS' illegal retaliation and violations infringed on MS. COLLINS' exercise of her United States Constitution First and Fourteenth Amendments rights.

Complaint, 109.

Construing the above allegations with a determination of whether Ms. Collins' is alleging that Defendants' March 25, 2021 Resolution is the basis for Defendants liability or merely existing to provide context, *Baral*, 1 Cal.5th at 394, it is clear that emotional distress that Ms. Collins' incurred was founded upon the deprivation of her First Amendment constitutional rights which Defendants' violated when they failed to afford her Twitter posts First Amendment protection.

By failing to afford protection to her 2016 Twitter posts that Ms. Collins' uttered as a private citizen, Defendants affirmed and perpetuated the public opinion's rush to judgment that she was a racist. Defendants formal request that Ms. Collins' resign pursuant to its March Resolution was just the vehicle or context for the basis for Defendants' liability which was Defendants' violation of her First Amendment rights.

Additionally, the March 25, 2021 Resolution can also be construed as mere evidence related to liability which is distinguishable from liability that is based upon speech or petitioning activity. *See Graffiti Protective Coatings, Inc. v. City of Pico Rivera* 181 Cal.App.4th 1207, 1214-2115 (2010). Here, Defendants' Resolution is evidence that Defendants violated Ms. Collins' First Amendment rights in their action of stripping away her vice president position and committee assignments. As such, although the emotional distress incurred by Ms. Collins' was exacerbated and perhaps 'prompted' by Defendants' protected activity of passing its March 25, 2021 Resolution, it did not however "arise from it" as it again arose from Defendants' refusal to recognize Ms. Collins' First Amendment rights. *See, Gallimore v. State Farm Fire & Casualty Ins. Co.* 102 Cal.App.4th 1388 (2002); *see also, San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* 125 Cal.App.4th 343, 353-359(2004)("the fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not [automatically] mean that the litigation challenging that action arose from protected activity"); *Montebello*, 1 Cal.5th at pp. 425-426(discussing with approval San Ramon's distinction, for anti-SLAPP purposes, between government decisions and the deliberations that lead to them).

As such, Ms. Collins' claim for Intentional Infliction, as alleged, is not subject to a Section 425.16 challenge.

## III. CLAIMS FOR NEGLIGENCE, SKELLY VIOLATION, AND RETALIATION UNDER CALIFORNIA LABOR CODE § 1102.5

A similar result exists with respect to Ms. Collins' derivative State claims for negligence under Government Code section 815.2(fifth cause of action), violation of procedural due process under *Skelly* (sixth cause of action), and retaliation under California Labor Code § 1102.5 (seventh cause of action).

The gravamen of these claims is Defendants' actions resulting in effectively 'demoting' Ms. Collins' from both her Board position as vice president and the entirety of her committee assignments while alleging that she held a property right to said positions.[4] See Complaint, 114,

---

[4] The question of whether state law conceives an elected official as an employee has not been categorically foreclosed. For example, under both California and federal law, elected officials are considered employees for tax withholding purposes. *See* 26 U.S.C. § 3401(c); Cal. Un. Ins. Code § 1279. Thus, payroll taxes must be withheld

5th Cause of Action for Negligence("breached their duty to MS. COLLINS by terminating her employment position as vice president and her committee duties"); Complaint, 114, 6th Cause of Action for Violation of *Skelly* Rights(violation of minimum due process where Ms. Collins' held a property right in her vice president post and committee assignments); and Complaint, 117, 120, 7th Cause of Action, Retaliation in Violation of Labor Code § 1102.5(Retaliation based upon Ms. Collins' complaints as to Defendants' resorting to violating the Board's proper protocols and rules in moving to strip her of her vice president post and committee assignments).

As such, by no manner do the above claims and the acts on which their liability is based invoke Defendants' otherwise protected speech or petition rights. As such, they are not subject to a Section 425.16 challenge.

## **CONCLUSION**

As the foregoing analysis makes plain, Defendants Section 425.16 Motion to Strike must be denied.

**Dated: June 18, 2021**                    **RESPECTFULLY SUBMITTED,**
                                            **LAW OFFICES OF BONNER & BONNER**

                                            */s/Charles A. Bonner*
                                            Charles A. Bonner

                                            **Attorney for Plaintiff**

---

from officials' salary. Additionally, elected officials and board members working in their official capacity are also employees for the purpose of obtaining workers' compensation coverage. Cal. Labor Code § 3351.

1

## <u>CERTIFICATE OF SERVICE</u>

2
I hereby certify that on this 18th of June, 2021, I electronically filed the foregoing documents:

3

4
**DOCUMENT(S):**

5
**PLAINTIFF ALISON COLLINS OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

6

7
with the Clerk of the Court using the CM/ECF system.

8
I also certify that all participants in the case are registered CM/ECF users and that service

9
will be accomplished by the CM/ECF system.

10
Served and executed this <u>18th</u> Day of June<u>, 2021.</u>

11

12

13
<u>/s/ Charles Bonner</u>
Charles Bonner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO STRIKE          4:21-cv-02272-HSG