Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
Camille Hamilton Pating (SBN: 122890)
cpating@meyersnave.com
Margaret W. Rosequist (SBN: 203790)
mrosequist@meyersnave.com
Yujin Chun (SBN: 306298)
ychun@meyersnave.com
MEYERS NAVE
1999 Harrison Street, 9th Floor
Oakland, California 94612
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants
SAN FRANCISCO UNIFIED SCHOOL DISTRICT; COMMISSIONER JENNY LAM; COMMISSIONER FAAUUGA MOLIGA; COMMISSIONER MATT ALEXANDER; COMMISSIONER KEVINE BOGGESS; and COMMISSIONER MARK SANCHEZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ALISON COLLINS,<br><br>    Plaintiff,<br><br>v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, CITY AND COUNTY OF SAN FRANCISCO; SCHOOL BOARD COMMISSIONERS JENNY LAM, IN HER INDIVIDUAL CAPACITY; FAAUUGA MOLIGA IN HIS INDIVIDUAL CAPACITY; MATT ALEXANDER IN HIS INDIVIDUAL CAPACITY; KEVIN BOGGESS IN HIS INDIVIDUAL CAPACITY; AND MARK SANCHEZ IN HIS INDIVIDUAL CAPACITY AND DOES 1-50, INCLUSIVE,<br><br>    Defendants. | Case No. 4:21-cv-02272-HSG<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR OSC SEEKING A PRELIMINARY INJUNCTION**<br><br>Date:    August 19, 2021<br>Time:    2:00 p.m.<br>Crtrm.:  2, 4th Floor<br><br>The Hon. Haywood S. Gilliam, Jr.<br><br>Complaint Filed:    March 31, 2021<br>Trial Date:    None Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

    A. Relevant Facts. ..................................................................................................... 2

    B. Plaintiff's Distorted And Irrelevant Statements. ................................................... 3

III. PLAINTIFF HAS NOT SATISFIED THE HIGH BURDEN REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION ......................................................................... 5

    A. Plaintiff Is Not Likely To Succeed On The Merits Of Her First Amendment Claim As Her Removal From Internal Board Leadership Positions Does Not Violate Her Free Speech Rights. ..................................... 6

    B. Plaintiff Has Not Established Any Immediate Irreparable Free Speech Injury. ................................................................................................................. 11

    C. The Balance Of Equities And Public Interest Tip Heavily In Favor Of Defendants. ........................................................................................................ 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Acosta v. City of Costa Mesa*,
  718 F.3d 800 (9th Cir. 2013) .................................................................................................. 5

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................................ 6

*Blair v. Bethel Sch. Dist*,
  608 F.3d 540 (9th Cir. 2010) .......................................................................................... *passim*

*Chalk v. U.S. District Court, Central District of California*,
  840 F.2d 701 (9th Cir. 1988) ................................................................................................ 12

*Harper v. City of Los Angeles*,
  533 F.3d 1010 (9th Cir. 2008) .............................................................................................. 12

*Hensley v. City of Port Hueneme*,
  2019 WL 3035057, *4 (C.D. Cal. 2019) ................................................................ 1, 6, 8, 11

*Lopez v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) ................................................................................................ 5

*Los Angeles Mem. Coliseum v. Nat. Football League*,
  634 F.2d 1197 (9th Cir. 1980) .............................................................................................. 11

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) (*per curiam*) .......................................................................................... 5

*New York Times v. Sullivan*,
  376 U.S. 254 (1964) ................................................................................................................ 9

*Phelan v. Laramie Cnty. Cmty. Coll. Bd.d of Trs.*,
  235 F.3d 1243 (10th Cir. 2000) .................................................................................. 1, 6, 11

*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968) .............................................................................................................. 10

*S. Bay United Pentecostal Church v. Newsom*,
  No. 20-56358, 2021 WL 222814 (9th Cir. Jan. 22, 2021) ................................................... 6

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................................... 5

*Zilich v. Longo*,
   34 F.3d 359 (6th Cir. 1994) ............................................................................................. *passim*

**State Cases**

*Seelig v. Infinity Broadcasting Corp.*
   97 Cal. App. 4th 798 (2002) ....................................................................................................... 9

**State Statutes**

Gov't Code
   § 3540.1(j) ................................................................................................................................ 10
   § 54956 ....................................................................................................................................... 4
   § 54960.1(b) ............................................................................................................................... 4

**Rules**

Fed. R. Civ. Proc. 65(b)(1) ................................................................................................................ 5

**Constitutional Provisions**

First Amendment ................................................................................................... *passim*

## I.      INTRODUCTION

The courts are not in the business of protecting politicians from the political consequences of their speech and determining leadership positions on an elected school board.  Yet this is just what Plaintiff is asking this Court to do here.  Plaintiff Collins is an elected member of the Board of the San Francisco Unified School District who is suing the District and five of her colleague Boardmembers for removing her from internal leadership positions because of recently resurfaced former tweets she made about Asian Americans and her current response to these tweets.  Plaintiff offers a diatribe of her political grievances and an exposé on the harsh reality of political office and the political fallout she has encountered as a result of her strong opinions and the current rough political atmosphere that the Board operates within.  What is missing is a viable legal theory to support her argument that she should be restored to her former internal leadership positions.  This is because there is none.  Without any legal grounds to support her First Amendment claim, Plaintiff cannot meet the requirements for the issuance of a preliminary injunction and this request for extraordinary relief should be denied.

First, Plaintiff cannot show a likelihood of success on the merits of her First Amendment claim (or any other claim).  The Board is entitled to have the leadership it believes best reflects its views and removing Plaintiff from her internal leadership positions is not a First Amendment violation.  *See Blair v. Bethel Sch. Dist*, 608 F.3d 540, 544 (9th Cir. 2010); *see also Zilich v. Longo*, 34 F.3d 359, 361 (6th Cir. 1994); *Phelan v. Laramie Cnty. Cmty. Coll. Bd.d of Trs.*, 235 F.3d 1243, 1245-46 (10th Cir. 2000); *Hensley v. City of Port Hueneme*, 2019 WL 3035057, *4 (C.D. Cal. 2019).  Secondly, Plaintiff will not suffer immediate irreparable injury to her free speech rights if the Court does not issue a preliminary injunction.  Instead, Plaintiff can say whatever she wants, whenever she wants, and in fact, she does just that.  She has no entitlement to the relief she seeks— namely reinstatement as Board vice president and reassignment to her former committee positions.  Finally, the balance of hardships and the public interest tip heavily in favor of the School Board Defendants.  It is critical to maintain the independence of the political

process and to prevent the Board's internal workings from being hijacked by a politician unhappy with her loss of internal Board assignments.

Plaintiff remains an active Boardmember and has not had any of her speech restricted. Plaintiff's request for extraordinary relief, asking this Court to step in and issue a preliminary injunction to restore her to the position of vice president and to her former assignments on various committees, should be denied in its entirety.

## II. FACTUAL BACKGROUND

As set forth below, Defendants provide this Court with a succinct overview of the relevant facts at issue in this case. Defendants also set forth a brief correction to some of the distortions and hyperbole Plaintiff offers in her lengthy and often irrelevant rendition of the political background leading up to this litigation.

### A. Relevant Facts.

In 2016, prior to winning elected office as a Board member for the School District, Ms. Collins posted tweets that she says reflect her efforts "to combat anti-black racism in the Asian community." Compl. ¶ 2. These tweets recently resurfaced when third parties, not named as defendants in this litigation, republished the comments. Compl. ¶¶ 48-49. Upon reviewing the resurfaced tweets, the majority of Collins' Board colleagues found her tweets "inflammatory" and to "perpetuate gross and harmful stereotypes" about the Asian American community. Compl. ¶ 11; Board Resolution No. 213-25A1 found at Exhibit 3 to the Declaration of Board Executive Assistant Esther V. Casco ("Bd. Exec. Assistant Casco Dec1."). The Defendant Boardmembers called out their views that Collins' prior tweets and her current response to the republication of the tweets undermines her ability to work with the sizeable Asian American students and their parents that are served by the Board. Compl. ¶¶ 53-54; Board Resolution No. 213-25A1 found at Exh. 3. On March 25, 2021, the School Board adopted Resolution No. 213-25A1 ("the Resolution" or "the No Confidence Resolution") removing Collins from her internal Board leadership roles on committees and as vice president via a 5-2 vote. Compl. ¶ 11; Resolution No. 213-25A1 found at Exh. 3.

The No Confidence Resolution does not remove Collins from her elected office as a Boardmember, does not take away any of her compensation, nor restrict her ability to speak out in any manner she chooses. *See* Resolution No. 213-25A1 found at Exh. 3. Collins retains her elected position with all rights to vote, attend Board meetings, attend committee meetings, receive her salary, and act in her capacity as an elected official. Bd. Exec. Assistant Casco Decl., ¶¶ 13, 14. Of note, although no longer a member of any committee, Collins may still attend any and all committee meetings and any decision made by a committee is purely advisory—committees have no standalone authority nor do items need to go through a committee before being placed on the Board's agenda. *See* Bd. Exec. Assistant Casco Decl., ¶¶ 13, 14, Exh. 7. The net effect of this is that it is the Board who takes any and all official actions of which Collins is a sitting and full voting member.

Based on the No Confidence Resolution removing Collins from her internal leadership position on the School Board, she filed suit against the District as well as five of her Board colleagues who voted for the Resolution asserting a variety of federal and state law claims and seeking injunctive relief as well as purported compensatory and punitive damages. On May 17, 2021, Defendants filed a motion to dismiss the entire Complaint without leave to amend and a motion to strike the state law claims based on California's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute.

**B.     Plaintiff's Distorted And Irrelevant Statements.**

Plaintiff's Motion is replete with inaccuracies and irrelevancies, untethered from the legal issues before this Court. Defendants address each of these in turn in their objections to Plaintiff's declaration filed concurrently. Defendants also provide a brief correction to some of these misstatements below.

First, Plaintiff's argument about purported lack of proper notice and/or procedures in regards to Resolution No. 213-25A1 is flatly wrong and has no relevance to her First Amendment claim (or any other claim in her Complaint). Nonetheless, Defendants address this issue here to set the record straight. Resolution No. 213-25A1 was not considered in a closed session, as claimed by Plaintiff, but rather was considered during

the open session at the Board's March 25, 2021 special meeting. *See* Bd. Exec. Assistant Casco Decl., ¶ 3, Exh. 4. Moreover, while the Board rules do provide that non-routine matters will appear on the Board's agenda for at least two regular meetings prior to adoption, this is not required under the Brown Act and this requirement can and has often been suspended by the Board. *See* Bd. Exec. Assistant Casco Decl., ¶ 7, Exh. 5. Indeed, Plaintiff is well aware that these timing rules for introducing resolutions may be suspended as they have been suspended in the recent past to allow for resolutions introduced by Plaintiff herself to move forward more quickly. *See* Bd. Exec. Assistant Casco Decl., ¶ 8, Exh. 6.

     Here, Resolution No. 213-25A1 was being considered at a special meeting, was placed on the agenda at the direction of President Lopez, and it appeared as an item on the posted agenda 24 hours prior to the meeting pursuant to the requirements of the Brown Act. *See* Bd. Exec. Assistant Casco Decl., ¶¶ 4, 6, Exh. 2; *see also* Gov't Code § 54956. Tellingly, Plaintiff asserts no Brown Act violation in this case, as there was none, and even if Plaintiff believed there had been a violation, she made no written demand to cure as is required prior to bringing a claim for a Brown Act violation. *See* Gov't Code § 54960.1(b); *see also* Bd. Exec. Assistant Casco Decl., ¶¶ 10, 16. In short, Plaintiff's lengthy diatribe about violations of meeting and notice requirements has no legal relevance to this case and moreover, is simply factually wrong.

     Next, Plaintiff makes the inflammatory and untrue statement that Defendants "colluded with and conspired with Diane Yap on pursuing a media campaign intended to malign" her. *See* Plaintiff's Motion at 4:19-20. The Boardmember Defendants coordinated no such activities with Ms. Yap. Indeed, Plaintiff's Complaint is bereft of any conspiracy causes of actions or factual allegations about a conspiracy claim. Plaintiff's attempt to distract from the legal issues at play by making such highly charged and inaccurate conclusory statements is unfortunate and should not be given any credence. Plaintiff's attempt to play fast and loose with the facts is also highlighted by her claim that she is "the only Black person on the Board." *See* Plaintiff's Motion at 5:7-8. In fact,

4
Case No. 4:21-cv-02272-HSG
DEFENDANTS' OPPOSITION TO OSC RE PRELIMINARY INJUNCTION

Boardmember Boggess is also a Black Board member.  Plaintiff also makes the unsupported claim that because Boardmember Moliga, an Asian American man, now holds the position of vice president, that this is evidence of gender bias.  *See* Plaintiff's Motion at 11:5-7.  Once again, this case is not about gender bias, sexual discrimination, or racial bias – these highly charged comments have no connection to this federal action.

Plaintiff also complains about her rights being violated because she was criticized and subject to "shaming" during public comment at Board meetings.  *See* Plaintiff's Motion at 14:10-21.  But pursuant to the First Amendment, the Board is required to allow on topic comments by the public unless they cause an "actual disruption."  *See Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (9th Cir. 2013); *see also* Bd. Exec. Assistant Casco Decl., ¶ 17, Exh. 9.  Tellingly, while Plaintiff is complaining about her own free speech rights she is seeking to shut down the free speech rights of others.

Focusing on the relevant legal issues at play, as discussed in detail below, Plaintiff has no likelihood of succeeding on the merits of her First Amendment claim and her request for a preliminary injunction should be denied.

### III. PLAINTIFF HAS NOT SATISFIED THE HIGH BURDEN REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION

The Supreme Court and the Ninth Circuit have explained that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012), quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*).  To obtain such extraordinary relief mandates that the moving party show:

(1) likelihood of success on the merits;

(2) likelihood of irreparable harm absent a preliminary injunction;

(3) that the balance of equities tips in favor of issuing an injunction;

(4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); Fed. R. Civ. Proc. 65(b)(1).  When the government is a party to the action, the balance of equities and public

interest factors merge into a single element. *S. Bay United Pentecostal Church v. Newsom*, 2021 WL 222814, *16 (9th Cir. 2021). In the alternative, the "sliding scale" approach can be used whereby a party seeking a preliminary injunction must show a combination of serious questions going to the merits, and must also show that the balance of hardships tips sharply in the movant's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). A weaker showing on either of the two points can be outweighed by a stronger showing on the other. *Id*. Plaintiff falls well short of satisfying either of the standards for granting injunctive relief.

      **A.**    **Plaintiff Is Not Likely To Succeed On The Merits Of Her First Amendment Claim As Her Removal From Internal Board Leadership Positions Does Not Violate Her Free Speech Rights.**

Plaintiff has no likelihood of succeeding on the merits of her flawed First Amendment claim against the District and various Boardmember Defendants. First and foremost, as discussed in detail in Defendants' currently pending motion to dismiss, Plaintiff, as an elected official, does not have a fundamental right to an appointed internal Board leadership position and her request that a preliminary injunction issue to "return her to the positions and membership she held prior" to the Board's adoption of Resolution No. 213-25A1, lacks all merit. Rather, the case law is clear—action taken in the political arena to remove an elected official colleague from an internal leadership position does not support any actionable First Amendment claim. *Blair*, 608 F.3d at 544; *Zilich*, 34 F.3d at 361; *Phelan*, 235 F.3d at 1245-46; *Hensley*, 2019 WL 3035057 at *4. Instead, such actions are part of the rough and tumble of the political process, a process that may be brutal and harsh but which does not form the basis for any legal action. Accordingly, Boardmember Collins' First Amendment claim, founded on being stripped of her titular role of vice

president and committee assignments, will not succeed on the merits and cannot support the issuance of a preliminary injunction.[1]

As discussed in detail in Defendants' concurrently pending motion to dismiss, the Ninth Circuit has already directly ruled on this issue in the *Blair* case, rejecting a First Amendment retaliation claim brought by a school boardmember against his fellow boardmembers who voted to remove him as their vice president because of his criticism of the school district's superintendent. *Blair*, 608 F.3d at 544. The Court found that this action was the ordinary functioning of the democratic process. *Id.* The other boardmembers wanted someone in a leadership position who shared their positive views about the superintendent and they were entitled to remove Blair from his internal leadership positions. *Id.* The Ninth Circuit explained that while the impetus to remove Blair as vice president undoubtedly stemmed from his speech (namely his advocacy against the superintendent) the board's action did not amount to retaliation in violation of the First Amendment. *Id.* at 546. Rather, in the political arena it is common for political bodies to have voting for internal leadership positions be openly partisan and just as Blair's constituents could vote him out of office based on his views and speech, so too his co-boardmembers could vote him out of internal leadership roles without violating the First Amendment. *Id.* at 544-45. All the boardmembers (not just Blair) had protected interests in speaking out and voting their conscience on the issues they confronted including the internal matter of who among them was best to fill certain titular, leadership positions. *Blair*, 608 F.3d at 545. Blair had a First Amendment right to criticize the superintendent but the other boardmembers also had the corresponding right to replace him with someone who, in their view, represented the majority of the board. *Id.* at 546.

---

[1] Plaintiff's request for a preliminary injunction is premised solely on her alleged First Amendment claim and thus that is the only claim discussed herein. But as discussed fully in Defendants' concurrently pending motion to dismiss, all of Plaintiff's claims in her Complaint fail as a matter of law and thus none of her claims can support the issuance of a preliminary injunction.

Likewise, in *Zilich*, the Sixth Circuit rejected an outgoing councilmember's First Amendment retaliation claim against city councilmembers who passed a resolution stating that he had never been qualified to hold office. *Zilich*, 608 F.3d at 363. The Sixth Circuit explained that voting on legislative resolutions is simply the expression of political opinion and that a legislative body does not violate the First Amendment when some members cast their votes in opposition to other members based on partisan, political, or ideological differences. *Id*. Similarly, in *Hensley*, the district court found that a city councilmember that was censured and removed from all committees by his fellow councilmembers for his speech with which they disagreed, did not have a viable First Amendment retaliation claim. *Hensley*, 2019 WL 3035057 at *4.

Here, similar to the cases discussed above, the Board action supported by the various named Boardmember Defendants to pass the Resolution removing Plaintiff from her internal leadership positions does not amount to a First Amendment violation as a matter of law and Plaintiff will not succeed on the merits of her claim. *See Blair*, 608 F.3d at 544; *see also Zilich*, 34 F.3d at 361; *Hensley*, 2019 WL 3035057 at *4. Plaintiff offers no tenable argument or legal support to the contrary. Rather, Plaintiff takes the specious position that because her tweets took place before she was an elected Boardmember, that the Ninth Circuit's decision in *Blair* is inapplicable. *See* Plaintiff's Motion, at 31:1-13. The *Blair* ruling, however, has no such temporal requirement. Rather, the timing of when Plaintiff's views were expressed does not change the legal analysis or the fact that the Board is entitled to have the internal leadership it wants regardless of whether the views it disagrees with were expressed prior to, or during, an elected official's tenure. *See Blair*, 608 F.3d at 545. Moreover, even if the timing of Plaintiff's speech is relevant (which it is not), the Complaint and Resolution make clear that Defendants are concerned with Plaintiff's current actions as a Boardmember—namely her response to her old tweets. *See* Compl. ¶¶ 9, 11, 51; *see also* Resolution No. 213-25A1 found at Exh. 3.

Likewise, Plaintiff's argument that her old tweets had no relation to Board action or activity is also both legally irrelevant and factually inaccurate. *Blair* does not call out a

requirement that removing a boardmember from an internal leadership position must be related to the boardmember's stance on official business  Rather, disagreement on any topic can lead to leadership change as a political body is entitled to appoint leaders that it thinks best represent its views whether those views be partisan, political, or ideological. *See Blair*, 608 F.3d at 545; *see also Zilich*, 608 F.3d at 363.  Moreover, Plaintiff's old tweets and her current response to same, are in fact related to Board business.  Plaintiff's colleagues are concerned that her prior tweets and current response to the re-publication of her tweets undermines Plaintiff's ability to work on issues with the sizeable Asian American community that is served by the District.  *See* Compl. ¶¶ 53-54.  The No Confidence Resolution removing Plaintiff from her leadership position specifically calls out this link to District business and that the Board has "lost confidence" in Plaintiff's "ability to focus on the pressing needs of the district at this time."  *See* Resolution No. 213-25A1 found at Exh. 3.

Similarly, Plaintiff's stance that her removal from internal Board leadership positions is a violation of the First Amendment because the No Confidence Resolution "slandered" her as "racist" is also legally and factually wrong.  *See* Plaintiff's Motion, at 31:1-13.  While Plaintiff tosses around the word "slander" she does not attempt to allege a slander claim in her Complaint.  Indeed, slander is an extremely high bar when dealing with public officials.[2]  Also notably, the term "racist" is wholly absent from the Resolution which instead states the opinion that "inflammatory statements made by Boardmember Collins toward the Asian American community in 2016 perpetuate gross and harmful stereotypes and leave no room for nuance or potential misunderstanding."  *See* Resolution

---

[2] To state a defamation claim, a plaintiff who is a public official (such as Boardmemeber Collins) must prove with clear and convincing evidence both actual malice and that the statement of fact is provably false. *See New York Times v. Sullivan,* 376 U.S. 254 (1964); *see also Seelig v. Infinity Broadcasting Corp.* 97 Cal. App. 4th 798, 809 (2002). Statements that do not contain provably false factual assertions, such as rhetorical hyperbole, vigorous epithets, lust and imaginative expressions of contempt, and language used in a loose, figurative sense, are not actionable as defamation. *Id.* at 799-800 [explaining that statements calling plaintiff a "local loser," a "chicken butt" and a "big shank" were not facts about plaintiff that were provably false.]

No. 213-25A1 found at Exh. 3.  The No Confidence Resolution expresses the opinion of why Boardmembers chose to remove Plaintiff from her internal leadership positions.  And just as Plaintiff's speech is protected by the First Amendment, Defendants' speech, even if offensive to Plaintiff, is also afforded First Amendment protection and does not form the basis for any legally cognizable claim.  The Boardmember Defendants' expression of political opinion and their action to replace Plaintiff with someone who, in their view, represents the majority of the Board better, is not a violation of Plaintiff's First Amendment rights.  *See Blair*, 608 F.3d at 546.  Rather, this is politics at play.  And while Plaintiff is entitled to fight it on the political front, this is not a fight for the courts.

Additionally, Plaintiff's two-page discussion of the *Pickering* balancing test is also inapposite and curious as even Plaintiff concedes that the *Pickering* test is "inappropriate" in this case.  *See* Plaintiff's Motion at 24:3.  This is because the *Pickering* test evaluates the constitutionality of the government's action regarding the speech of a government employee.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 564 (1968).  But Plaintiff is not an employee but rather an elected official, so *Pickering* has no application in this matter.  *See* Gov't Code § 3540.1(j).  Likewise, Plaintiff's discussion of First Amendment jurisprudence for a public forum and the test for content-based restrictions is inapplicable too.  *See* Plaintiff's Motion at 24:11-28.  Plaintiff's speech has not been restricted by Defendants as she can say what she wants, when she wants, and indeed she does.  But while Plaintiff can say what she wants, she is not insulated from the political consequences of her speech, such as being removed from internal leadership positions.  *See Blair*, 608 F.3d at 544-45.

Finally, Defendants note that Plaintiff retains the position to which she was elected by the general public, namely School District Boardmember.  Her loss of internal leadership positions on the Board does not impact her ability to vote on the issues that come before the Board or otherwise deprive her of the authority or duties associated with her elected office.  *See* Bd. Exec. Assistant Casco Decl., ¶¶ 13, 14.  Rather, the fact that she no longer holds her prior internal leadership positions is the ordinary functioning of the

democratic process—specifically, the other Boardmembers wanted someone else in those internal positions. *See Blair*, 608 F.3d at 544-45. In local politics elected officials are frequently removed from internal leadership positions for various political or personal reasons and Plaintiff's request that this Court insulate her from the give and take of the political process should be rejected. Plaintiff simply has no First Amendment claims here and cannot establish such as a matter of law. This fact alone mandates this extraordinary relief be denied.

### B. Plaintiff Has Not Established Any Immediate Irreparable Free Speech Injury.

Furthermore, Plaintiff is not entitled to injunctive relief merely because she alleges constitutional violations. Rather, Plaintiff must do more than merely allege harm sufficient to establish standing, and instead she must demonstrate immediate threatened injury which she has failed to do here. *See Los Angeles Mem. Coliseum v. Nat. Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). Indeed, the fact that Plaintiff waited more than two months after filing her Complaint to seek a preliminary injunction from this Court is illustrative of the fact that there is no immediate irreparable harm. But even more importantly, Plaintiff has no legal injury at play in this case to support the issuance of injunctive relief.

Specifically, an elected official does not have a fundamental right to an appointed internal leadership position. *Blair*, 608 F.3d at 544-45. Accordingly, Plaintiff's claim of irreparable injury due to her loss of the titular role of vice president and her positions on committees is not legally actionable harm. *See id.*; *see also Zilich*, 34 F.3d at 361; *Phelan*, 235 F.3d at 1245-46; *Hensley*, 2019 WL 3035057 at *4. Nor are her grievances about the thwarting of her personal ambition or ability to hold the position of Board president legally protectable interests warranting the issuance of injunctive relief. *See id.* While internal leadership positions may be "extremely visible and impactful positions" as claimed by Plaintiff, Plaintiff has no legal entitlement to these position. Nor does she have any

entitlement to be promoted from the role of vice president to president, a role that can be held by any Boardmember.

Moreover, while Plaintiff is no longer serving on committees, she, like all other Boardmembers, may attend committee meetings and the committees themselves are only advisory with no standalone authority. *See* Bd. Exec. Assistant Casco Decl., ¶ 14, Exh. 7. Plaintiff's attempt to rely by analogy on a case involving an employee who was reassigned to a different job with wholly different tasks and where the plaintiff had demonstrated a strong possibility of success on the merits of his discrimination claim is unavailing. *See Chalk v. U.S. District Court, Central District of California*, 840 F.2d 701, 709 (9th Cir. 1988). Rather, Plaintiff is not an employee but an elected official who still holds the position to which she was elected and she has no possibility of success on the merits of her First Amendment claim. Plaintiff still holds all the rights and powers of her elected position including the right to vote on all matters that come before the Board, to introduce items for consideration by the Board, to receive her monthly compensation as a Boardmember, and to advocate for or against any items that come before the Board. *See* Bd. Exec. Assistant Casco Decl., ¶ 13. There is simply no immediate irreparable injury at issue in this case. Indeed, tellingly, Plaintiff makes no claim that her speech has been shut down but only that her influence and capacity to advance her positions has waned which is a function of the ebb and flow of the political winds and not any violation of her First Amendment rights.

Plaintiff also includes a litany of perceived injuries that are unmoored from her free speech rights and not linked to the actions of Defendants themselves but rather attributable to third parties such as damage to professional relationships, social ostracizing, destruction of her political future, damage to professional opportunities, and physical risk to she and her family. *See* Plaintiff's Motion at pp. 14-18. But any claim brought under Section 1983 must include the necessary element of causation and here Plaintiff does not even attempt to link up how these alleged injuries impact her free speech rights, or were caused by Defendants. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)

[discussing causation requirement for Section 1983 claims]. While Plaintiff may suffer difficult and hurtful consequences as a result of her political speech, these consequences are not actionable injury under Section 1983.

In short, there is no threat of immediate irreparable injury to Plaintiff's free speech rights as she is able to say whatever she wants, whenever she wants, and indeed she does. Plaintiff, just like all the other Boardmembers, has no entitlement to internal leadership positions or any of the heightened political power that might come with those internal positions. The courts are not in the business of helping politicians with their political careers or shielding them from the political consequences of their actions. Plaintiff's request for injunctive relief for these ends—namely to advance and protect her political power—must be rejected.

### C. The Balance Of Equities And Public Interest Tip Heavily In Favor Of Defendants.

With respect to the final two factors—the balance of equities and the public interest—these factors as well support the denial of injunctive relief.

Specifically, if this Court were to issue the injunctive relief sought by Plaintiff—namely her reinstatement as vice president of the Board and as a member on various committees—the Court will be disrupting the integrity of the internal operations of the Board and the political process as a whole. The courts do not determine who holds internal leadership positions, the elective body itself does, just as the courts do not determine the outcome of elections, the electorate does. To distract from this fundamental point, Plaintiff erects a strawman, claiming that if her comments are "sufficient to disqualify her future participation as a School Boardmember, the proper protocol for such disqualification is an electoral recall" and that "the voters of San Francisco" rather than Boardmembers "should determine whether comments made prior" to Plaintiff's tenure should render her "ineligible and unfit for serving on the School Board." *See* Plaintiff's Motion at 30:3-8. Exactly so. Plaintiff still holds her position as a School Boardmember and will do so unless she is voted out of office by the electorate. By contrast, internal

leadership positions on the Board are not decided by the voters but by her colleague Boardmembers. Plaintiff's attempt to conflate her elected position as a Boardmember with that of the appointed internal Board leadership positions must be rejected. That Plaintiff no longer holds her former internal leadership positions on the Board neither tips the equities in her favor nor provides any support for her injunctive relief claim.

## IV. CONCLUSION

For all the foregoing reasons, the District and Boardmember Defendants respectfully request that this Court deny Plaintiff's request for a preliminary injunction.

DATED: June 18, 2021            MEYERS NAVE

By:     /s/ Deborah J. Fox
        DEBORAH J. FOX
        Attorneys for Defendants
        SAN FRANCISCO UNIFIED SCHOOL
        DISTRICT; COMMISSIONER JENNY LAM;
        COMMISSIONER FAAUUGA MOLIGA;
        COMMISSIONER MATT ALEXANDER;
        COMMISSIONER KEVINE BOGGESS; and
        COMMISSIONER MARK SANCHEZ

3777482