CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

David C. Anderson
LAW OFFICES OF DAVID C. ANDERSON
591 Redwood Hwy., Bldg. 4000
Mill Valley, CA 94941-3039
Phone: (415) 395-9898
Facsimile: (415) 395-9839
Email: cynthia@dcandersonlaw.com

Howard Moore, Jr., Esq. (SBN 55228)
**MOORE & MOORE**
1569 Solano Avenue, #204
Berkeley, CA 94707
Tel: (510) 542-7172 / Fax: (510) 528-3024
Email: moorlaw@aol.com

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ALISON COLLINS,<br><br>         Plaintiff,<br><br>    vs.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>         Defendants. | **Case No.:  4:21-cv-02272-HSG**<br><br>**PLAINTIFF ALISON COLLINS' REPLY TO DEFENDANTS' OPPOSITION TO APPLICATION AND MOTION FOR ORDER DIRECTING DEFENDANTS TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE RESTORING PLAINTIFF TO HER POSITION AS VICE PRESIDENT OF THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT BOARD AND TO HER COMMITTEE APPOINTMENTS**<br><br>Date:  Thursday, August 19, 2021<br>Time:  2:00 PM<br>Courtroom:  Courtroom 2 – 4th Floor<br>Judge:  Honorable Haywood S. Gilliam, Jr. |

1

2

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF FACTS ............................................................................................ 1

INTRODUCTION ......................................................................................................... 1

LEGAL ARGUMENT .................................................................................................. 1

I.    In Deciding a Request for Preliminary Injunction, the Court is not Required to Weigh
      Evidence or Make Factual Determinations. ................................................................ 1

II.   Ms. Collins' Has Satisfied the Requirements for a Preliminary Injunction.................... 2

      A.  Defendants' Conduct Epitomizes a First Amendment Violation...................................... 2

      B.  Ms. Collins Has Sufficiently Shown Irreparable Harm ................................................. 12

      C.  The Balance of Equities Tips in Ms. Collins' Favor..................................................... 14

CONCLUSION............................................................................................................. 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. United States*, 509 U.S. 544, 550(1993) ................................................................. 13

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) .................................... 1

*Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 545 (9th Cir.2010).................................................. passim

*Bond v. Floyd* 385 U.S. 116, 135-37(1966)............................................................................ 4, 10

*Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009).................................................................. 8

*Buckley v. Valeo*, 424 U.S. 1, 14, 96 S. Ct. 612, 46 L. Ed. 2d 659(1976) ...................................... 3

*Cf. Westfall v. City of Crescent City* 2011 U.S.Dist.LEXIS 57353, at *15(N.D.Cal. May 26, 2011) ............................................................................................................................... 10

*Clements v. Fashing*, 457 U.S. 957, 963(1981) ........................................................................... 8

*Connick v. Myers*, 461 U.S. 138, 145(1983)........................................................................... 7, 14

*Elrod v. Burns*, 427 U.S. 347, 373(1976) ................................................................................. 12

*Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992)........................................................................................................................ 13

*Freytag v. Commissioner*, 501 U.S. 868, 878(1991) ............................................................... 1, 14

*Garcetti v. Ceballos* 547 U.S. 410, 419 (2006) ........................................................................ 5, 9

*Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 827(D.N.J. 2020) ................................... 11

*Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999) ......................................... 8

*Holloway v. Clackamas River Water*, 2014 U.S.Dist.LEXIS 170616, at *7(D.Or. Dec. 9, 2014). 9

*Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972) ...................................... 8

*Lane v. Franks*, 573 U. S. 228, 235, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014).......................... 6

*Mahanoy Area Sch. Dist. v. B.L.* 594 U.S.___ (2021) ............................................................. 6, 7

*Matal v. Tam*, 582 U. S. ___, 137 S. Ct. 1744, 198 L. Ed. 2d 366, 374 (2017) ............................. 3

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931)............................................................... 13

*Peeper v. Callaway County Ambulance Dist.* 122 F.3d 619, 623(8th Cir. 1997)........................ 11

*Pinard v. Clatskanie School Dist*. 6J, 467 F.3d 755, 770 (9th Cir. 2006) ........................... 2, 7, 13

*Ramos v. Wolf*  975 F.3d 872, 887(9th Cir. 2020) ........................................................................ 2

*Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) .......................................... 4

*Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002) ....................... 12

*Schenck v. United States*, 249 U.S. 47, 52(1919) ........................................................................ 6

*Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) ................................................................ 1, 15

*Snyder v. Phelps*, 562 U.S. 443, 452(2011) .............................................................................. 14

*Sweatt v. Painter*, 339 U.S. 629, 631, 70 S. Ct. 848, 94 L. Ed. 1114 (1950) ................................ 9

*Texas v. Johnson,* 491 U. S. 397, 414(1989) .......................................................................... 3, 8

*Werkheiser v. Pocono Township*, 780 F.3d 172, 181 (3d Cir. 2015)............................. 4, 5, 11, 13

*Wilson v. Houston Cmty. College Sys.* 955 F.3d 490, 496-500(5th Cir. 2020) ............................ 5

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Cottrell*, 632 F.3d at 1131..................................... 1

*Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ..................................................................... 4, 5

**Statutes**

Section 12(b)(6) ........................................................................................................................ 2

Section 1983 First Amendment retaliation ......................................................................... passim

**Constitutional Provisions**

First Amendment ................................................................................................................ passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF FACTS

MS. COLLINS incorporate all facts stated in her Complaint for Damages (Dkt.1) and in her Motion for an Order to Show Cause (Dkt.23) as though fully set forth herein.

## INTRODUCTION

While it is perhaps true that this Court is "not in the business of protecting politicians from political consequences of their speech and determining leadership positions on an elected school board," see Def. Opp., p.5, this Court is very much in the "business" of ensuring that the rights enumerated in the U.S. Constitution are upheld, particularly rights under the First Amendment whose contours have been particularly under siege at this time.  *Freytag v. Commissioner*, 501 U.S. 868, 878(1991) (judicial branch exercises authority to determine constitutionality of government conduct and statutory propriety).

Disregarding Defendants' hyperbole to the contrary, what is currently before this Court on Ms. Collins' Order to Show Cause is whether Ms. Collins has established a (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[1] *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Cottrell*, 632 F.3d at 1131.

## LEGAL ARGUMENT

**I.   In Deciding a Request for Preliminary Injunction, the Court is not Required to Weigh Evidence or Make Factual Determinations.**

Defendants' engagement in factual disputes and expressing an indefatigable belief that their version of the facts is indeed factually correct is without measure as such a factual determination at the pleading stage is outside the Court's prerogative. It is well established that within the posture of a preliminary injunction application, the court "need only find probabilities that the necessary facts can be proved," not whose version of the facts are correct.  *Ramos v. Wolf*

---

[1]  The Ninth Circuit employs an alternative "serious questions" standard, also known as the "sliding scale" variant of the *Winter* standard. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under this alternate standard, the Court weighs the preliminary injunction factors "on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018).

975 F.3d 872, 887(9th Cir. 2020)(a preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss . . .. "). Thus, Defendants' hyperbole to the contrary must be disregarded.

Similarly, Defendants Objections to Declaration of Alison Collins must also be disregarded as it is apparent in so doing, Defendants stray far beyond the stated intention of Rule 7-5 which merely prohibits 'conclusions and argument,' and not every other imaginable evidentiary objection. Defendants Objections to Collins' Declaration is a kitchen-sink pre-trial limine motion disguised as a Rule 7-5 objection. This Court may justifiably construe said Objection as a waste of judicial economy in its lack of focus and concentration on pointing out the explicit prohibitions stated in Rule 7-5. When considering arguments in a motion, courts evaluate the admissibility of the evidence. Nevertheless, the paragraphs relied upon by Ms. Collins in her Order to Show Cause are expressly factual and relied upon to support the factors required for her showing the sufficiency of a preliminary injunction.

## II.   Ms. Collins' Has Satisfied the Requirements for a Preliminary Injunction

### A.   Defendants' Conduct Epitomizes a First Amendment Violation.

#### 1.   Defendants' Conduct Would Chill a Person of Ordinary Firmness

Primarily, as set out more fully in her Opposition to Defendants Section 12(b)(6) motion, unlike Defendants' refrain that "removing Plaintiff from her internal leadership positions is not a First Amendment violation," the more accurate question under consideration here is whether Defendants removal of Ms. Collins from her Board positions in retaliation for her speech would "chill a person of ordinary firmness from continuing to engage" in exercising their First Amendment.[2] The allegations in Ms. Collins' complaint strongly suggest that where speech uttered as a private citizen is subsequently subjected to retaliation when that private citizen assumes an elected office, there is definitely a chilling effect particularly when free and open debate is an

---

[2]   Thus, having pled Section 1983 First Amendment retaliation, Ms. Collins' must make a showing that she would likely succeed in proving that: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Pinard v. Clatskanie School Dist*. 6J, 467 F.3d 755, 770 (9th Cir. 2006).

accepted hallmark of the workings of democratic government. *See, Buckley v. Valeo*, 424 U.S. 1, 14, (1976)(political speech is at the core of the First Amendment.).

Thus, where like here, when such encouraged and otherwise protected openness to expressions of frank and sometimes discomforting statements are repudiated and retaliated against, then chilling is indeed a result. *Texas v. Johnson,* 491 U. S. 397, 414(1989)("bedrock principle" that speech may not be suppressed simply because it expresses ideas that are "offensive or disagreeable."); see also *Matal v. Tam*, 582 U. S. ___, 137 S. Ct. 1744, 198 L. Ed. 2d 366, 374 (2017) ("speech may not be banned on the ground that it expresses ideas that offend").  Free and open debate and expression is definitely chilled where a would-be activist with sights on assuming an elected office knew that her otherwise protected speech as a private citizen would thereafter be retaliated against when attaining an elected office.

Such chilling effect has effectively befallen Ms. Collins' in her position as Commissioner. If speech made when she was a private citizen/parent speaking on matters of public and personal concern regarding the safety of her children in public school warranted unprotected retaliation, then all the more so that speech uttered within the halls of the Board of Education are afforded even less protection particularly if this Court affirms the holding that an elected official has absolutely no rights to protected speech.

### 2.   Ms. Collins' Speech Uttered as a Private Person Falls Outside the Severely Limited Protection Afforded Speech of an Elected Official

A clear reading of the legal precedent reasonably substantiates Ms. Collins' likelihood of success that otherwise warrants this Court to grant a preliminary injunction. In her Opposition to Defendants' Motion to Dismiss, Ms. Collins has exhaustively set out an analysis of the established standards for determining the existence of a First Amendment right when confronted with retaliation. Here, Ms. Collins respectfully directs this Court's attention to the arguments made therein.   Additionally, as Defendants have only addressed Ms. Collins' Section 1983 First Amendment retaliation claim, Ms. Collins here rightfully replies to that claim leaving the balance of her claims to be considered under Defendants' Motion to Dismiss. See. Defendants Opposition to OSC for Preliminary Injunction, p. 7, fn. 1.

Primarily, Ms. Collins relies upon the Supreme Court's broad pronouncement in *Bond v. Floyd* 385 U.S. 116, 135-37(1966) wherein the Court afforded an elected official "the widest latitude to express views on issues of policy" without being subject to retaliation. *Id.* Despite being decided in 1966, the Supreme Court has subsequently not revisited its holding in Bond yet several circuit courts, including the Ninth Circuit have chosen to construe *Bond* as providing the authority to effectively move *Bond*'s affordance of the widest latitude of protected speech to a latitude of practically non-existence.

The Ninth Circuit in *Blair v. Bethel Sch. Dist.* premised its reluctance to afford an elected official with First Amendment protection on its conclusion that essentially electoral politics relies upon the rough and tumble undermining and backbiting of opposing points of view that more than often result in actions that can conceivably be construed as retaliation based upon speech 608 F.3d 540, 545 (9th Cir.2010). Several other Circuits have concurred with the Ninth Circuit in *Blair*. *See, Werkheiser v. Pocono Township*, 780 F.3d 172, 181 (3d Cir. 2015); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994); *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996).

What is clear is that despite the fact that petitioner in *Bond* was embroiled in the same ideological "squabbles of hardball politics" when the Supreme court upheld Julian Bond's First Amendment rights, here, some sixty years later and without a subsequent ruling from the Supreme court overriding its holding in *Bond*, the Circuit courts above have all but overridden the protection afforded by *Bond* to elected officials speaking on matters of public concern.

Nevertheless, in addition to the Supreme Court, this Court is beholden to Ninth Circuit precedent and thus its holding in *Blair.* Given that the rationale in *Blair*, as well as sister Circuits following *Blair*, for refusing to protect an elected official's speech from retaliation is that retaliation is merely part and parcel of an elected officials' engagement in electoral politics, it is imperative that a plaintiff's speech took place while he or she was in fact an elected official, and thus, in the position of actually engaging in the give-and-take of squabbles of hardball politics, *Werkheiser*, 780 F.3d at 181; *See* also *Blair*, 608 F.3d at 546; *Zilich,* 34 F.3d at 363.

In fact, in every case involving an elected official seeking redress for First Amendment retaliation against fellow elected officials, the plaintiff had exercised his or her speech while seated

and engaged in his or her elected office. *See, Blair*, 608 F.3d at 540(speech in opposition to school superintendent while seated as an elected school board member); *Werkheiser*, 780 F.3d at 156(speech opposing an appointee while seated on Township's Board of Supervisors); *Zilich,* 34 F.3d at 359(speech in opposition to Mayor while seated as a City Council member); *Wilson v. Houston Cmty. College Sys.* 955 F.3d 490, 496-500(5th Cir. 2020)(speech raising Board of Trustee violations while seated as an elected Board Trustee).

Here, Ms. Collins has alleged that the speech upon which her fellow elected officials relied on in publicly condemning her professional character and stripping her of her leadership and committee positions on the school board was uttered some four years prior to her election to the school board. Her Twitter posts occurred in 2016 when she was a private citizen parent advocating for equitable educational opportunities for her children and the children of Black and Latino families residing within the school district. Complaint, 2,13. Thus, at the time Ms. Collins exercised her protected First Amendment speech, she was a private citizen and as such was afforded more heightened protection than she has been subsequently afforded as an elected official. Given that Ms. Collins' speech was exercised when wearing the 'hat' of a private citizen and not an elected official, the quantum of protection that her speech warrants must be evaluated under the more heightened standards applicable to a private person.

Additionally, as Ms. Collins' speech was uttered outside the "boxing ring" of electoral politics, her speech therefore lies outside the rationale underlying the Ninth Circuit and sister Circuit's refusal to recognize First Amendment protection against retaliation when executed on account of give-and-take political squabbles.

As a proper determination of the category under which a person exercises his or her speech is imperative in order to ascribe the proper standard of review and quantum of protection afforded, *see, Garcetti v. Ceballos* 547 U.S. 410, 419 (2006)[3] here, Ms. Collins' speech must be evaluated

---

[3] The Supreme court in *Garcetti* expressly recognized a distinction between the protection afforded a government employee who speaks as a "private" citizen on a matter of public concern and a public employee who doesn't speak as a private citizen. *Garcetti*, 547 U.S. at 419("the First Amendment limits the ability of a public employer to leverage the employment relationship to restrict…the liberties employees enjoy in their capacities as private citizens").

under the appropriate standard for speech of a private citizen.   To rule otherwise would result in applying a standard of protection incommensurate with the actual context and circumstances in which the speech was uttered. *See, Schenck v. United States*, 249 U.S. 47, 52(1919)("the character of every speech act depends upon the circumstances in which it is done).

Such argument is decisively affirmed when on June 23, 2021, the U.S. Supreme court, in considering the First Amendment protection afforded a student for speech uttered outside the purview of the school district's otherwise broad reach, decided that such speech is afforded heightened protection. In *Mahanoy Area Sch. Dist. v. B.L.* 594 U.S.___ (2021), a student relying on social media critiqued her cheerleading club using vulgar and offensive language which was subsequently punished by the school district. The Supreme court considered the extent of the school district's reach in regulating speech. As with the case at bar, the Supreme court held that student speech uttered on a matter of public concern, no matter how offensive, was protected where the speech was made as a "private citizen" outside the reach of the public school's authority. The court held that "there is a category of speech that is almost always beyond the regulatory authority of a public school. This is student speech that is not expressly and specifically directed at the school, school administrators, teachers, or fellow students and that addresses matters of public concern, including sensitive subjects like politics, religion, and social relations. Speech on such matters lies at the heart of the First Amendment's protection," citing,  *Lane v. Franks*, 573 U. S. 228, 235 (2014) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment"); *Schenck v. Pro-Choice Network of Western N. Y.*, 519 U. S. 357, 377(1997) ("commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment"). *Mahanoy Area Sch. Dist. v. B.L.,* 594 U.S. ___ (2021)

Again, as Ms. Collins' argues herein, the Supreme court considered, underscored and emphasized the facts under which the student exercised her speech.

"Consider too when, where, and how B. L. spoke. Her posts appeared outside of school hours from a location outside the school. She did not identify the school in her posts or target any member of the school community with vulgar or abusive language. B. L. also transmitted her speech through a personal cellphone, to an audience consisting of her private circle of Snapchat friends. These features of her speech, while risking

transmission to the school itself, nonetheless (for reasons we have just explained, supra, at 7-8) diminish the school's interest in punishing B. L.'s utterance."

*Mahanoy Area Sch. Dist.,* 594 U.S.___.

*Mahanoy* makes it absolutely clear that considerations of the context and circumstances under which speech is uttered is integral in determining the quantum of protection that speech is afforded. As vehemently argued herein, Ms. Collins' speech, as exercised when she was a private unelected parent of school children, must be afforded the appropriate protection applicable to that category. It is clear from Mahanoy that the Supreme court absolutely affirms such a reading and thus, wholly and reasonably applicable to other realms of State action. *Mahanoy*, 594 U.S.___("if today's decision teaches any lesson, it must be that the regulation of many types of off-premises student speech raises serious First Amendment concerns, and school officials should proceed cautiously before venturing into this territory.")

### 3.     Ms. Collins' Prima Facie Claim for First Amendment Retaliation against Private Speech Has a Strong Likelihood of Success

As such, in order to establish a First Amendment retaliation claim, Ms. Collins is only required to show that (1) she engaged in constitutionally protected speech; (2) the defendants' actions "would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) the protected activity was a substantial or motivating factor in the defendants' conduct. *Pinard,* 467 F.3d at 770.

In her complaint, Ms. Collins has more than set out factual allegations that her December 2016 Twitter posts, whose subject matter focused on community relations and solidarity between parents of African-American and Asian-American children attending school in the district were unequivocally constitutionally protected speech. Complaint, 2, 3, 5, 39, 42-46; *Connick*, 461 U.S. at 146 (constitutionally protected speech includes matters of public concern, i.e., "any matter of political, social or other concern to the community.")

Defendants' actions, i.e., drafting and passing a School Board resolution that was publicly disseminated that censured and condemned Ms. Collins' character by inferentially labeling her a racist would categorically "chill a person of ordinary firmness from continuing to engage in the protected activity." Complaint, 11, 50, 51, 52, 54, 92; *see Harris v. Victoria Indep. Sch. Dist.*, 168

F.3d 216, 220 (5th Cir. 1999)(formal reprimands qualify as adverse employment actions and, when given in retaliation for First Amendment activity, are actionable); *Laird v. Tatum,* 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)(adverse action having the effect of punishing someone for his or her speech); *Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009) (whether retaliatory acts would deter a person of ordinary firmness from speaking is a question of fact for the jury).

Lastly, Ms. Collins' has more than sufficiently alleged that her protected activity, i.e., 2016 Twitter posts were a substantial or motivating factor in the defendants' conduct, i.e., public condemnation where Defendant Board members made explicit reference to Ms. Collins' statements in their Board Resolution No. 213-25A1,[4] March 25, 2021 which publicly and reasonably inferred that she was a racist. Defendant Board members declared:

> "WHEREAS, The inflammatory statements made by Commissioner Collins towards the Asian American community in 2016 perpetuate gross and harmful stereotypes and leave no room for nuance or potential misunderstanding; WHEREAS, When the social media comments resurfaced, what mattered most was that she, as a leader and elected official, accept responsibility and atone for the trauma inflicted on the community by her words."

Complaint, 59. *See, Texas v. Johnson,* 491 U. S. at 414("bedrock principle" that speech may not be suppressed simply because it expresses ideas that are "offensive or disagreeable.").

Thus, when Ms. Collins speech is evaluated under the proper standard commensurate with the context and circumstances in which the speech was uttered, Ms. Collins can more than sufficiently rely upon the protection afforded her speech as a private citizen to reasonably show a strong likelihood of success that Defendants retaliatory conduct violated her rights under the First Amendment.

1. **Ms. Collins' Prima Facie Claim for First Amendment Retaliation against Speech of an Elected Official Has a Strong Likelihood of Success**

---

[4] To the extent that Defendants' Resolution No. 213-25A1, as an administrative act promulgated by an elected body, can be construed as a regulation which expressly implicated Ms. Collins First Amendment right, such regulation must be reviewed under heightened scrutiny. *Clements v. Fashing*, 457 U.S. 957, 963(1981). As such, the Board's action can by no means be construed as "narrowly tailored" when considering that Ms. Collins forthrightly accepted responsibility for her speech that was uttered four years before she assumed elected office and offered a formal apology. Thus, given the circumstances under which the Board acted, a public enactment whose express purpose was to condemn and censure Ms. Collins' for exercising her speech can reasonably be construed as disproportionate and considerably overbroad.

Nevertheless, were this Court to reject Ms. Collins' application of a "private citizen" standard when evaluating her First Amendment retaliation claim, then Ms. Collins' claim as an elected official also succeeds when comparing her factual showing with the standards set out by the Ninth Circuit in *Blair v. Bethel Sch. Dist.*,

The Ninth Circuit in *Blair*, a case involving an elected Board member who incurred retaliation at the hands of his fellow Board members who removed him from his post of Board vice president on account of publicly criticizing the school superintendent, expressly noted that if the case was a typical First Amendment retaliation case, the court would be left to determine only whether the Board's action would have chilled a person of ordinary firmness from speaking out. *Id.* However, the Ninth Circuit determined that the case before it required application of a different standard given that plaintiff was an elected official.

Primarily, the court deemed that the adverse action taken against the plaintiff, i.e., removal from the board's vice presidency position was merely a "minor indignity and de minimis deprivation of benefits and privileges," *Id.* at 544 such that it didn't offend the First Amendment as it wouldn't stifle someone from speaking out. *Id.* However, in evaluating the kinds of actions that would stifle or chill someone from speaking out, the Ninth Circuit mistakenly looked at cases pertaining to public employees which, as the *Garcetti* standard, has been deemed inapplicable to claims involving elected officials. *Holloway v. Clackamas River Water*, 2014 U.S.Dist.LEXIS 170616, at *7(D.Or. Dec. 9, 2014)(*Garcetti* standards for public employee inapplicable to political speech of elected officials).

### a.   Ms. Collins' Removal From her Post as Board Vice President and Committee Assignments were Not De Minimis Depravations

Nevertheless, given the principle of "deciding constitutional questions only in the context of the particular case before the Court," *Sweatt v. Painter*, 339 U.S. 629, 631, 70 S. Ct. 848, 94 L. Ed. 1114 (1950) the facts are such that Ms. Collins can show that her removal from the position of Board vice president was by no means "a minor indignity and de minimis deprivation," *Blair,* 608 F.3d at 544 but rather was indispensable to fulfilling her mandate to her constituency and partaking in her role as Commissioner.

Ms. Collins can show that her removal from serving as Board vice president has precluded her ability to effectively serve her constituency as she could no longer attend joint S.F. City Council and S.F. Board of Education meetings where she was otherwise able to advocate and advance philanthropic investment in public school which is a major component for vitalizing her constituencies school infrastructure and programming. OSC p. 9:15-21.

Likewise, Ms. Collins is now precluded from reviewing the Board's agenda and chairing committee meetings which excludes her voice and the interests of her constituency in shaping the District's priorities, OSC p. 9:22-27. As vice-president is next in line for assuming president, Ms. Collins' has also been stripped of that very propitious opportunity. OSC, p. 10:1-16, 10:21-27.

Prior to her removal from the vice-presidency, Ms. Collins worked hand in hand with president Gabriela Lopez on working to affirmatively addressing racial justice and advocating for their Black and Brown district constituent families. OSC, p. 11:17-28. Similarly, as a Black mother and educator, Ms. Collins' leadership role provided a representation that her constituents where seldom, if ever able to benefit from. OSC, p.12:4-8.

Thus, Defendants stripping away Ms. Collins seat as vice president and ability to participate in Board committees was not "a discouragement that was 'minimal' and 'wholly subjective,'" but was fundamental to Ms. Collins' ability to perform her elected responsibilities and hence, to exercise of free speech rights. *Cf. Westfall v. City of Crescent City* 2011 U.S.Dist.LEXIS 57353, at *15(N.D.Cal. May 26, 2011). As such, Defendants assertion that Ms. Collins loss of leadership positions had "not deprived her of the authority or duties associated with her elected office" is factually inaccurate and merely a parroting of language from Blair in order to minimize the actual impact of their retaliation.

### b. Defendants Retaliatory Actions Detrimentally interfered with Her Ability to Adequately Perform Her Elected Duties

Similarly, on account of an erroneous reading of *Bond*, the Ninth Circuit in *Blair* held that the Supreme Court sided with petitioner because of defendants' refusal to seat him would have resulted in nullifying a popular vote. *Blair*, 608 F.3d at 545 n. 2. Despite the fact that the Supreme court in Bond had made no such assertion, Ms. Collins' declaration in support of her Order to Show Cause plainly sets out that given the interrelationship between Ms. Collins undertaking the

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S OSC       4:21-cv-02272-HSG

role of Board vice president and her ability to fulfill her duties and promises to her constituency, the removal of the vice president position has had the practical effect of "unseating" Ms. Collins as a Commissioner.

Such result fully supports the well-established exception to the standard that elected officials are without protection against retaliation by their colleagues. Thus, the First Amendment prohibits retaliation against elected officials for speech when the retaliation interferes with their ability to adequately perform their elected duties. *Werkeiser*, 780 F.3d at 181; *Blair*, 608 F.3d at 545 n.4("depriving an elected official] of authority he enjoyed by virtue of his popular election.")

"To be considered impermissible, such retaliation would have to cross the line to actual interference with the person's function as an elected official. When that occurs, the rules of the democratic political contest have been subverted, and it cannot no longer be presumed that the outcomes are legitimate." *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 827(D.N.J. 2020); *see also, Peeper v. Callaway County Ambulance Dist.* 122 F.3d 619, 623(8th Cir. 1997)(restrictions on an elected officials participation in the elected offices official functions necessarily violate the elected officials First Amendment associational rights while also infringing upon voters' rights to be represented).

Here, Ms. Collins can show that being stripped of the role of vice president and partaking in the Board's committees, Ms. Collins' ability to adequately perform her elected duties has significantly been impaired. OSC p. 9:15-21; p. 9:22-27; p.10:1-16, 10:21-27; p.11:17-28;12:4-8.

As the above analysis fully supports, the fact that Ms. Collins removal from both her Vice-presidency post and Board committee positions cannot simply be construed as a "minor indignity" and "de minimis deprivation," *Blair*, 608 F.3d at 544 and that such removal fundamentally "interfered" with Ms. Collins' function as an elected official, *Werkeiser*, 780 F.3d at 181; *Blair*, 608 F.3d at 545 n.4, the dictates affirmed in *Blair* that an elected official is without First Amendment protection are inapplicable to the circumstances at bar.

Ms. Collins can therefore show that she held a constitutional right to speak freely on a matter of public concern without being subjected to retaliation[5], both under the standards for a private citizen and as an elected official. Ms. Collins has more than sufficiently shown a strong likelihood of prevailing on her Section 1983 First Amendment retaliation claim.

**B.      Ms. Collins Has Sufficiently Shown Irreparable Harm**

It is well settled that the loss of First Amendment freedoms for even "minimal periods constitutes irreparable injury justifying the grant of a preliminary injunction [or a temporary restraining order]." *Elrod v. Burns*, 427 U.S. 347, 373(1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") "So too, direct penalization . . . of First Amendment rights constitutes irreparable injury" for the purposes of granting temporary injunctive relief. *Id*. A party seeking preliminary injunctive relief in a First Amendment context "can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

In addition to the above analysis which reasonably demonstrates the existence of a colorable First Amendment claim and thus a likelihood of success on her Section 1983 claim, Ms. Collins has put forth a compelling showing of irreparable harms that she is sustaining on account of Defendants' express violation of her protected speech.

As argued within her Order to Show Cause, irreparability exists on account that with each passing day, Ms. Collins is irretrievably losing opportunities to advance, not only her own personal objectives as a Board member, but those policies, programs, and objectives that she had promised her constituency that she would achieve. Each day that Ms. Collins serves her term of office without the benefit of her rightfully appointed position as Board Vice-president and membership

---

[5] Contrary to Defendants assertions that their Resolution was just an official means by which they made an "in-house" business decision of replacing a Commissioner whose private speech had no longer rendered her fit to serve in a leadership role such that her opinions were out of sync with the majority viewpoint," Defendants resolution was itself an act of retaliation for Ms. Collins' private speech on account that the resolution was a public censuring initiated to publicly silence Ms. Collins and by doing so, raise their own popularity with the very constituency who disfavored the policies promoted by Ms. Collins, i.e., the creation of more inclusivity for the traditionally excluded student populations on account of their race and ethnicity.

in her Board committees, she is irreparably being denied the opportunity to partake in the enumerated duties that such Board positions hold, as well as obstructing her ability to avail herself of the benefits and opportunities that derive from such positions.[6]

Had Ms. Collins' removal simply been a political realignment based on the Board's desire to select a leader that it thought best represented its views, then such decision is clearly within the Board's prerogative. But here, given Ms. Collins' removal from her posts were expressly and exclusively catalyzed and motivated by her protected political speech, Defendants' conduct cannot be merely permitted and excused as an expression of the day-to-day workings of a political body. If so, such a reading would completely and entirely eviscerate any and all reach of First Amendment protection. As such, if *Blair* is to be read that an elected official, by simply holding that title, is categorically without a First Amendment right, then such reading arguably elicits the prior restraint doctrine.

Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931)("chief purpose of the (First Amendment's) guaranty is to prevent previous restraints upon publication"). The term prior restraint is used to describe administrative actions "forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550(1993). In order to justify a prior restraint, the government must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest. *See, Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992).

Here, if the law categorically permits elected officials to legally retaliate against each other for any and all speech, then such understanding is effectively a prior restraint on an elected

---

[6] Defendants' assertion that since Ms. Collins' is without a "fundamental right" to her position as Board Vice president, as well as her committee assignments, the harm incurred on account of Defendants removing her from those posts are not "irreparable" is patently unavailing. Within the context of a Section 1983 First Amendment retaliation claim, the overarching question is whether the harm would irreparably "chill a person of ordinary firmness from continuing to engage in the protected activity," *Pinard*, 467 F.3d at 770 and specifically, whether the harm interferes with the official's ability to adequately perform their elected duties. *Werkeiser*, 780 F.3d at 181; *Blair*, 608 F.3d at 545.

officials' speech; wherein that official's ability to express unfettered opinion on matters of public concern is deeply threatened and overshadowed by the risk that such speech will incur retaliation by his or her colleagues. Such a result is completely contrary to the primary rationale underlying the First Amendment, i.e., "the First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open*." *Snyder v. Phelps*, 562 U.S. 443, 452(2011)("the right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it."); *Connick v. Myers*, 461 U.S. 138, 145(1983)(speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection).

On account of the articulated grounds set out in her Order to Show Cause and the analysis herein, Ms. Collins has sufficiently offered colorable grounds showing that she has and continues to be irreparably harmed on account of Defendants' constitutionally infirm retaliatory conduct.

### C.    The Balance of Equities Tips in Ms. Collins' Favor

Contrary to Defendants belief that the balance of equities tips in their favor on account that this Court strays from its jurisdiction were it to return Ms. Collins' to her pre-March 2021 Board postings, *Cf. Freytag*, 501 U.S. at 878, here, given the overwhelmingly established principles that elected officials are afforded the "widest latitude to express views on issues of policy" without being subject to retaliation, *Bond,* 385 U.S. at 135-37, and that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, *Connick* 461 U.S. at 145, the hardships most affirmatively tip in Ms. Collins' direction where the ramifications of silencing elected officials is infinitely more damaging than returning Ms. Collins to the position she assumed prior to her removal.

Thus, were elected officials permitted to indiscriminately retaliate at whim on account of their colleague's speech, the electorate would be harmed as their elected representatives would be forced to self censor their advocacy fearing that zealous candor would jeopardize the roles and positions, they hold whose benefits otherwise inures to their constituency.

1    As argued herein, given that Ms. Collins' term as Board Commissioner is finite and rapidly

2  ticking away during the pendency of this proceeding, her ability to fulfill the policies and mandates

3  that explicitly benefit her constituency and whose fulfillment is dependent on continuing in her

4  role as Board vice president, is greatly diminished. Again, although Defendants represent that

5  despite no longer holding the Board Vice-president post, Ms. Collins still "retains her elected

6  position with all rights to vote, attend Board meetings, attend committee meetings, receive her

7  salary, and act in her capacity as an elected official," such functions are bare minimum and by no

8  means fulfil the actual requirements of elected office wherein proactive advocacy and consensus

9  building are the predominant means of accomplishing the mandates promised to the electorate.

10  But for Defendants violation of Ms. Collins' speech rights, she would still hold the Vice-president

11  position and thus have been able to persist in availing herself of the capacities and conditions

12  inherent in that position.

13    Given that this Court is now asked to determine whether Ms. Collins' speech should be

14  afforded protection, the equities clearly favor a return to the status quo that existed prior to March

15  25, 2021. The equities certainly favor such court order for at the very least, it would mitigate

16  Defendants' harms from residually impacting Ms. Collins' constituency by restoring Ms. Collins'

17  ability to manifest her representational promises and mandates that her appointed positions helped

18  to manifest. Thus, the balance of harms falls favorably on the side Ms. Collins such that a

19  preliminary injunction is most assuredly justified.

20    As the above analysis makes plain, Ms. Collins has met the standards applicable for

21  obtaining a preliminary injunction and/or its "sliding scale" variant where she has sufficiently

22  elicited 'serious questions going to the merits' of her claims and where 'the balance of hardships

23  tips sharply' in her favor. *Short*, 893 F.3d at 675.

## **CONCLUSION**

25    On account of the foregoing analysis, Ms. Collins respectfully requests this Court to grant

26  her Order to Show Cause for issuing a Preliminary injunction.

27  //

28  //

1

**Dated: July 23, 2021**                    **RESPECTFULLY SUBMITTED,**
                                            **LAW OFFICES OF BONNER & BONNER**

2

3                                           */s/Charles A. Bonner*
                                            Charles A. Bonner
4                                           Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2
I hereby certify that on this 23rd of July, 2021, I electronically filed the foregoing documents:

3

4
**DOCUMENT(S):**

5
**PLAINTIFF ALISON COLLINS' REPLY TO DEFENDANTS' OPPOSITION TO**
**APPLICATION AND MOTION FOR ORDER DIRECTING DEFENDANTS TO**

6
**SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**
**RESTORING PLAINTIFF TO HER POSITION AS VICE PRESIDENT OF THE SAN**

7
**FRANCISCO UNIFIED SCHOOL DISTRICT BOARD AND TO HER COMMITTEE**
**APPOINTMENTS**

8
with the Clerk of the Court using the CM/ECF system.

9
I also certify that all participants in the case are registered CM/ECF users and that service

10
will be accomplished by the CM/ECF system.

11
Served and executed this 23rd Day of July, 2021.

12

13

14
*/s/ Charles Bonner*_____

15
Charles Bonner

16

17

18

19

20

21

22

23

24

25

26

27

28