Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
Camille Hamilton Pating (SBN: 122890)
cpating@meyersnave.com
Margaret W. Rosequist (SBN: 203790)
mrosequist@meyersnave.com
Yujin Chun (SBN: 306298)
ychun@meyersnave.com
MEYERS NAVE
1999 Harrison Street, 9th Floor
Oakland, California 94612
Telephone: (510) 808-2000

Attorneys for Defendants
SAN FRANCISCO UNIFIED SCHOOL
DISTRICT, et al.

CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
cbonner799@aol.com
cabral@bonnerlaw.com

Howard Moore, Jr., Esq. (SBN 55228)
MOORE & MOORE
1569 Solano Avenue, #204
Berkeley, CA 94707
Tel: (510) 542-7172
Email: moorlaw@aol.com

Attorneys for Plaintiff
ALISON COLLINS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ALISON COLLINS,<br><br>           Plaintiff,<br><br>      v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, CITY AND COUNTY OF SAN FRANCISCO; SCHOOL BOARD COMMISSIONERS JENNY LAM, IN HER INDIVIDUAL CAPACITY; FAAUUGA MOLIGA IN HIS INDIVIDUAL CAPACITY: MATT | Case No. 4:21-cv-02272-HSG<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:      August 19, 2021<br>Time:     2:00 p.m.<br>Crtrm.:   2, 4th Floor<br><br>The Hon. Haywood S. Gilliam, Jr.<br><br>Complaint Filed:   March 31, 2021<br>Trial Date:             None Set |

| | |
|---|---|
| 1 | ALEXANDER IN HIS INDIVIDUAL CAPACITY; KEVIN BOGGESS IN HIS INDIVIDUAL CAPACITY; AND MARK SANCHEZ IN HIS INDIVIDUAL CAPACITY AND DOES 1-50, INCLUSIVE, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Defendants. |

Counsel for Defendants San Francisco Unified School District ("the District") and Boardmember Jenny Lam, Boardmember Faauuga Moliga, Boardmember Matt Alexander, Boardmember Kevine Boggess, and Boardmember Mark Sanchez ("the Individual Boardmember Defendants") (collectively "the Defendants") and Counsel for Plaintiff Alison Collins ("the Plaintiff") hereby submit this Joint Case Management Statement pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, the Stranding Order for All Judges of the Northern District of California, and the Standing Order for Judge Haywood S. Gilliam, Jr.

Pursuant to Federal Rule of Civil Procedure 26(f) the parties met and conferred on July 27, 2021, via telephone. In attendance were Margaret W. Rosequist for the Defendants and Charles Bonner, Cabral Bonner and Howard Moore, Jr, for the Plaintiff.

1. **Jurisdiction And Service**

All the Defendants have been served and have filed a motion to dismiss and motion to strike the Complaint in this matter.

**Defendants' Position**

As asserted in their motion to dismiss, the Defendants' position is that the Court lacks jurisdiction over all the claims (both federal and state and for injunctive and monetary relief) as against the District, all state law claims against the Individual Boardmember Defendants, and all damages claims against the Individual Boardmember Defendants based on Eleventh Amendment immunity. The Defendants also assert that the Court lacks jurisdiction over Plaintiff's claims for damages against the Individual Boardmember Defendants based on qualified immunity.

**Plaintiff's Position**

Plaintiff disputes the Defendants' position and believes that the Court has jurisdiction over all her claims in this case as called out in her opposition to the Defendants' motion to dismiss.

2. **Facts**

**Defendants' Statement**

The Defendants believe that the issues in this case are solely legal issues that can be resolved by this Court at the pleadings stage, namely by granting the Defendants' motion to dismiss and motion to strike as Plaintiff lacks any viable cause of action based on her grievance of being removed from internal Board leadership positions. The relevant facts are as follows. Plaintiff Collins is an elected member of the School Board and is suing the District and five of her colleague Boardmembers for removing her from internal leadership positions because of recently resurfaced former tweets she made about Asian Americans and her current response to these tweets. Collins issued her tweets in 2016 and the tweets recently resurfaced when third parties not named as defendants in this litigation republished the comments. *See* Compl. ¶¶ 48-49. Upon reviewing the resurfaced tweets, the majority of Collins' Board colleagues found her tweets "inflammatory" and to "perpetuate gross and harmful stereotypes" about the Asian American community. Compl. ¶ 11; Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Exh. A (Board Resolution No. 213-25A1). As the Resolution calls out, Collins' prior tweets and her current response to the republication of the tweets undermines her ability to work with the sizeable population of Asian American students and their parents that are served by the Board. *See* Compl. ¶¶ 53-54; *see also* RJN, Exh. A. Accordingly, on March 25, 2021 the School Board adopted Resolution No. 213-25A1 removing Collins from her internal Board leadership roles on committees and as vice president via a 5-2 vote. Compl. ¶ 11; RJN, Exh. A. The Resolution states that the Boardmembers have "lost confidence in Commissioner Collins and her ability to focus on the pressing needs of the district at this time" and also states that "[a]lthough Commissioner Collins has acknowledged that her words may have caused pain, her public statements to-date have fallen short of sincere recognition of the harm she has caused and Vice President Collins does not seem to take meaningful responsibility for her actions." RJN, Exh. A. The Resolution does not remove Collins from her elected office as a School Boardmember, does not take away any of her compensation, nor does it restrict her ability

to speak out in any manner she chooses. *See id*. Collins retains her elected position as School Boardmember with all rights to vote, attend Board meetings and vote on all issues that come before the Board, attend committee meetings, receive her salary, and act in her capacity as an elected official. *See id.*

**Plaintiff's Statement**

On March 24, 2021, DEFENDANTS drafted a "Resolution" to remove Commissioner PLAINTIFF ALISON COLLINS ("MS. COLLINS) from her position as vice-president of the San Francisco School Board, and upon giving 24 hours' notice, on March 25, 2021, voted 5-2 passing that "Resolution", stripping PLAINTIFF ALISON COLLINS of her vice-president position and membership on all committees.

DEFENDANTS' illegal actions, in violation of MS. COLLINS' First Amendment Rights of free speech, were premised on a series of tweets published on December 4, 2016, nearly four and one-half years ago when MS. COLLINS was a private, non-governmental employee. DEFENDANTS, at all relevant times, knew that MS. COLLINS, advocating this message of eliminating racism against Black and Brown children in the school system.

On March 23, 2021, MS. COLLINS publicly apologized during a Board of Education Meeting. She endured a barrage of disparaging remarks for half an hour of the meeting. DEFENDANTS knew that protecting Black and Brown children from racist bullying and racist harassment was the motivation and advocacy in MS. COLLINS' tweets.

As a parent of two mixed race children who attended public school within the San Francisco Unified School District, Plaintiff Alison Collins ("Ms. Collins") was horrified at having to accept that every day her children's safety, as well as the safety of other Black and Latino children in the school district, were at risk and that the other so called minority voices in the District were not only ignoring the situation but exacerbating it by drawing distinctions between their children and the Black and Latino children. Collins Complaint dated March 31, 2021("Complaint") 3, 42.

On March 25, 2021, DEFENDANTS passed their illegal "Resolution", ignoring the United States Constitution they swore under their oath of office to uphold and defend, and

turned a blind eye to the First Amendment, providing: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." DEFENDANTS, at all relevant times, knew the First Amendment is applicable to the States under the provisions of the Fourteenth Amendment.

DEFENDANTS' "Resolution" was, and still is, "abridging the freedom of speech" of MS. COLLINS, causing injuries, harm, and damages to MS. COLLINS as far and wide as infinity of the internet's world wide web. DEFENDANTS' "Resolution" admits in its omission that DEFENDANTS' adverse action against MS. COLLINS was not based on any acts or conduct by MS. COLLINS as a public official, or which were improper as a vice-president and committee member.

MS. COLLINS' action seeks an Order to Show Cause why an injunction should not issue, restoring MS. COLLINS to her rightful position as vice-president and to each of the committee assignments she enjoyed, and for money damages in proportion to the harm DEFENDANTS caused. *See Compl.* : ¶¶ 1-4, 6,10, 12-14.

3. **Legal Issues**

   **Defendants' Statement**

   As discussed in detail in the Defendants' motion to dismiss, Plaintiff has not asserted any viable cause of action and her Complaint should be dismissed as a matter of law. Plaintiff has an apparent political grievance and dispute with the School District and five of her colleague Boardmembers whom she chose to name as Defendants in this matter and against whom she seeks punitive damages against.  Plaintiff's lawsuit is based on her loss of internal leadership positions on the School Board triggered by the resurfacing of prior tweets she made about Asian Americans and the companion political backlash, which resulted in the Defendants' decision to pass a resolution removing her from internal Board leadership positions, occasioned by Plaintiff's 2021 response to her inopportune 2016

tweets. She does not, however, have any viable legal cause of action as against any of these Defendants.

First, Plaintiff's claims in this case are barred by Eleventh Amendment immunity and qualified immunity. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03, 106 (1984). Further, the alleged actions of the Defendants also fail to state any viable federal or state law claim as a matter of law. The Ninth Circuit has made clear, when elected officials experience the hardball political consequences of their speech resulting in the loss of internal leadership positions, such does not form the basis for a First Amendment retaliation claim. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010); *see also Zilich v. Longo*, 34 F.3d 359, 361 (6th Cir. 1994); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1245-46 (10th Cir. 2000); *Hensley v. City of Port Hueneme*, 2019 WL 3035057 at *4 (C.D. Cal. 2019). Plaintiff retains all the authority of her elected office which includes engaging in rigorous public debate, and taking official action on any and all items that come before the Board. Collins' First Amendment retaliation claim fails as a matter of law.

Likewise, Plaintiff's two due process claims are fatally flawed and should be dismissed as she has neither a protected liberty interest nor property interest at play to support such claims. *See Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 971 (9th Cir. 2010); *see also Westfall v. City of Crescent City*, 2011 WL 4024663, *6 (N.D. Cal. Sept. 9, 2011) (*Westfall II*). Plaintiff's state law pendent claims are also legally deficient and should be dismissed. Moreover, Plaintiff's spurious claim for punitive damages in the amount of $15 million ($3 million per Boardmember Defendant) is subject to dismissal as a matter of law as Collins has not made any factual allegations, nor can she, that the actions of the individual Boardmembers were so outrageous or shocking to the conscience so as to justify a claim for punitive damages. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492-93 (2008).

Finally, Defendant's motion to strike Plaintiff's state law claims against the Boardmember Defendants should also be granted as California's anti-Strategic Lawsuit

Against Public Participation (anti-SLAPP) statute codified at California Code of Civil Procedure § 425.16 bars these claims.  The gravamen of Plaintiff Collins' claims are her grievances about the statements, actions and votes of the Defendants that are in furtherance of their free speech rights and squarely within the purview of the anti-SLAPP statute.  *See* Cal. Code Civ. Proc. § 425.16(b)(1); *see also Vargas v. City of Salinas*, 46 Cal. 4th 1, 14 (2009).  Plaintiff also has no likelihood of prevailing on the merits of her claims and the Defendants' motion to strike should be granted along with an award of attorneys' fees and costs as provided for under the statute.  *See* Cal. Code Civ. Proc. § 42516(c)(1).  Plaintiff Collins remains an active School Boardmember and has no viable legal claim to support any of the claims in her Complaint.

**Plaintiff's Statement**

**The Eleventh Amendment Does Not Bar Actions for Injunctive Relief Against Defendants in their Official Capacities**

While the Eleventh Amendent protects states from suits brought by citizens in federal court, pursuant to the *Ex parte Young* doctrine, Eleventh Amendment immunity "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002). Similarly, "suits against government officials in their individual or personal, rather than official capacities, are not barred by the Eleventh Amendment." *Roe ex rel. Callahan v. Gustine Unified School Dist.,* 678 F. Supp. 2d 1008, 1022 (E.D. Cal. 2009), citing *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir. 1990).

Here, as required under section 1983, Ms. Collins has demonstrated that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d

930, 934 (9th Cir. 2002). See, Complaint, ("Complaint") Lam, 51, 54, Moliga, 54, 56, All Defendants, 4, 7, 13, 47, 57; Order to Show Cause, dated May 26, 2021: All Defendants, p. 4:19-22; p. 6:1-7; Moliga, 11:5-7, 14:12-21; Lam, 14:12-21.

**Ms. Collins has Sufficiently Alleged a Violation of her First Amendment Rights**

**Ms. Collins Spoke as a Private Citizen on a Matter of Public Concern**

When considering that the First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail," *FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 377, 104 S. Ct. 3106, 82 L. Ed. 2d 278 (1984) speech on matters of public concern . . . is at the heart of the First Amendment's protection," *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758-59, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985)

In *Connick v. Myers,* 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983), the Supreme Court reiterated such by declaring:

The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the [Supreme] Court has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy [sic] of First Amendment values, and is entitled to special protection. *Connick,* 461 U.S. at 145. Speech involves a matter of public concern if the speaker's "expression can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Id.* at 146.

In 2016, and two years prior to taking on the role of an elected S.F. school board member, Plaintiff Alison Collins, as a private citizen and as a parent of children who attended San Francisco public schools expressed her concerns with that she perceived to be discrimination and inequities in her children's school and in an attempt to address such, sought to coalesce solidarity amongst the various ethnic and racial communities in the school district. Complaint, 39, 71. She did so under the clearly established understanding that criticism of a school district's policies involved a matter of public concern. *Givhan v.*

*Western Line Consolidated Sch. Dist.,* 439 U.S. 410, 415-16, 99 S. Ct. 693, 696-97, 58 L. Ed. 2d 619 (1979)(criticism of racial discrimination in school district); *Pickering v. Board of Education of Township High School District* 205, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) (criticism of Board of Education by employee for its allocation of school funds).

### Ms. Collins Speech was Uttered within a Public Forum

In exercising her otherwise protected speech, Ms. Collins' did so utilizing a 'public forum' such that her speech was afforded protection by the highest standards of review of restrictions on speech. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 445-46, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983). It is by now well established that the interactive space of a social media page is a public forum, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) and has been identified as "the most important place[] in a spatial sense for the exchange of views." *Packingham v. North Carolina,* 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017).

### In Speaking as a Private Citizen, Ms. Collins was Afforded the Most Expansive Protection.

When Ms. Collins' disseminated her tweets as a private citizen/parent on matters of public concern in 2016, some two years prior to being elected to the S.F. school board, the First Amendment afforded her, as a private individual, the broadest and most expansive protection of those rights.

### Under *Bond v. Floyd,* an Elected Official is Afforded a Heightened Degree of Protection When Speaking on Matters of Policy and Public Concern

While the United States Supreme Court initially afforded an elected official "the widest latitude to express views on issues of policy" without being subject to retaliation" as the central commitment of the First Amendment was that 'debate on public issues should be uninhibited, robust, and wide-open." *Bond v. Floyd,* 385 U.S. 116, 135-37, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966), several circuit courts, including the Ninth Circuit, have subsequently

severely narrowed that protection such that an elected official speech is now scantily protected against the whims of 'cancel culture' political retaliation by his or her elected officials' colleagues.

In *Bond v. Floyd*, Petitioner, Julien Bond, while a private individual serving as the communications director for the Student Nonviolent Coordinating Committee ("SNCC"), a civil rights organization involved in the struggle for liberation and self determination of African Americans as well as all oppressed populations, authored a statement that took exception to United States foreign policy in Vietnam. At the time Bond communicated both his own and SNCC's perspectives on U.S. involvement in Vietnam, he was also awaiting being sworn in as an elected representative to the Georgia House of Representatives. *Id.* at 116. Based expressly on account of Bond's speech, members of the Georgia Legislature sought to bar Bond from taking an oath of office as a member of the House of Representatives.

In upholding Bond's right to express his views on matters of public concern in the same capacity as a private citizen without being subjected to retaliation from his representative colleagues, the Supreme court stressed that "legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them . . . so [constituents] may be represented in governmental debates by the person they have elected to represent them." *Id.* Thus, rather than an elected official having to relinquish their protected speech upon assuming elected office, the Supreme court stressed that an elected official's speech retains the same degree of protection as held by a private citizen when speaking on a matter of public concern. *Id.* at 136("the interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.").

### Ms. Collins' Speech was Exercised Outside the Give-and-Take of Electoral Politics When She was a Private Citizen

Here, Ms. Collins has alleged that the speech upon which her fellow elected officials relied on in publicly condemning her professional character and stripping her of her

leadership and committee positions on the school board was uttered some two years prior to her election to the school board. Her Twitter posts occurred in 2016 when she was a private citizen parent advocating for equitable educational opportunities for her children and the children of Black and Latino families residing within the school district. Complaint, 2,13. Thus, at the time Ms. Collins exercised her protected First Amendment speech, she was a private citizen and as such as argued above, was afforded more heightened protection than she is subsequently afforded as an elected official. Given that Ms. Collins' speech was exercised when wearing the 'hat' of a private citizen and not an elected official, the quantum of protection that her speech warrants must be evaluated under the more heightened standards applicable to a private person.

As a proper determination of the category under which a person exercises his or her speech is imperative in order to ascribe the proper standard of review and quantum of protection afforded, here, Ms. Collins' speech must be evaluated under the appropriate standard for speech of a private citizen.

### Ms. Collins' has Sufficiently Alleged a Prima Facie Claim for First Amendment Retaliation against Private Speech

To establish a First Amendment retaliation claim, a non-prisoner, non-government employee private citizen plaintiff must show that (1) he or she engaged in constitutionally protected speech; (2) the defendants' actions 'would chill a person of ordinary firmness from continuing to engage in the protected activity'; and (3) the protected activity was a substantial or motivating factor in the defendants' conduct." *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006).

Here, Ms. Collins has more than set out factual allegations that her December 2016 Twitter posts, whose subject matter focused on community relations and solidarity between parents of African-American and Asian-American children attending school in the district and that derived from comments made at a November 2016 SFUSD board meeting, were unequivocally constitutionally protected speech. Complaint, 2, 3, 5, 39, 42-46; *Connick,* 461

U.S. at 146 (constitutionally protected speech includes matters of public concern, i.e., "any matter of political, social or other concern to the community.")

Defendants' actions, i.e., drafting and passing a School Board resolution that was publicly disseminated that censured and effectively condemned Ms. Collins' character essentially labeling her a racist would categorically "chill a person of ordinary firmness from continuing to engage in the protected activity." Complaint, 11, 50, 51, 52, 54, 92; *see Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir. 1999)(formal reprimands qualify as adverse employment actions and, when given in retaliation for First Amendment activity, are actionable); *Laird v. Tatum,* 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)(adverse action having the effect of punishing someone for his or her speech); *Brodheim v. Cry,* 584 F.3d 1262, 1274 (9th Cir. 2009) (whether retaliatory acts would deter a person of ordinary firmness from speaking is a question of fact for the jury).

### 4. **Motions**

The Defendants have a motion to dismiss and a motion to strike currently pending before the Court. Plaintiff has an application and motion for order directing defendants to show cause why a preliminary injunction should not issue currently pending before the Court. All motions are scheduled for hearing on August 19, 2021.

### 5. **Amendment Of Pleadings**

Plaintiff does not expect to amend her Complaint but reserves the right to do so in response to any order from the Court on the pending motions and reserves the right to seek leave of the Court to amend her Complaint as needed.

### 6. **Evidence Preservation**

The parties agree to take all necessary steps to preserve relevant evidence, including providing their respective clients with evidence preservation instructions/letters. The parties do not believe any issue about disclosure, discovery or preservation of electronically stored information (ESI) currently exist. The parties will meet and confer on any issues or disputes should such arise.

7. **Disclosures**

The parties agree that initial disclosures and other discovery is premature given the Defendants' pending motion to dismiss. The parties request that initial disclosures and the opening of discovery be deferred until after the pleadings issues have been resolved. Namely, should Plaintiff's Complaint survive past the pleading stage, the parties propose that initial disclosures and the opening of discovery take place 30 days after all the Defendants have answered the Complaint. The parties also agree that 30 days after all the Defendants have answered any pleadings, or when the Court so orders, that the parties will provide the Court with a further joint case management statement that details the discovery each party anticipates along with a proposed schedule for discovery and trial.

8. **Discovery**

The parties agree that initial disclosures and other discovery is premature given the Defendants' pending motion to dismiss. The parties request that initial disclosures and the opening of discovery be deferred until after the pleadings issues have been resolved. Namely, should Plaintiff's Complaint survive past the pleading stage, the parties propose that initial disclosures and the opening of discovery take place 30 days after all the Defendants have answered the Complaint. The parties also agree that 30 days after all the Defendants have answered any pleadings, or when the Court so orders, that the parties will provide the Court with a further joint case management statement that details the discovery each party anticipates along with a proposed schedule for discovery and trial.

9. **Class Actions**

Not applicable in this case.

10. **Related Cases**

The parties are not aware of any related cases.

11. **Relief**

**Defendants' Statement**

The Defendants request that the Court dismiss Plaintiff's Complaint for failure to state a claim and for lack of jurisdiction. The Defendants also request that the Court strike

Plaintiff's state law claims and award the Defendants their attorneys' fees and costs associated with the motion to strike pursuant to the anti-SLAPP statute.

Plaintiff seeks compensatory and punitive damages from the Defendants in this case. The Defendants see no grounds whatsoever for a claim of any damages as Plaintiff has no legal right to hold internal leadership positions on the School Board. *See Blair*, 608 F.3d at 544. Plaintiff lacks any credible argument for the exorbitant sum of damages she is seeking from her Board member colleagues, including the spurious claim for $15 million in punitive damages. Plaintiff's removal from internal leadership positions is a normal part of the democratic process and does not rise anywhere near the level of outrageous conduct that is shocking to the conscience as is needed for punitive damages. *See Exxon Shipping*, 554 U.S. at 492-93. The Defendants are unable to provide any bases for the calculation of damages if liability is established as the asserted damages are unmoored from any credible legal theory or right.

**Plaintiff's Statement**

Plaintiff's action seeks an Order to Show Cause why an Injunction should not issue, restoring MS. COLLINS to her rightful position as vice-president and to each of the committee assignments she enjoyed, and for money damages in proportion to the harm DEFENDANTS caused. Plaintiff incorporates by this reference her Prayer for Relief as outlined in her Complaint for Damages as though fully set forth in this report.

**12. Settlement and ADR**

The parties believe that given their pending respective motions, this case is not currently amendable to settlement or ADR.

**13. Consent To Magistrate Judge For All Purposes**

Plaintiff has already filed her statement that she will not consent to a magistrate judge.

**14. Other References**

The parties agree that this case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

The Defendants believe that if Plaintiff's Complaint is not dismissed outright, that the Defendants' pending motion to dismiss may in the alternative narrow the issues.

**16. Expedited Trial Procedure**

The parties do not believe that the Expedited Trial Procedures are suitable for this case.

**17. Scheduling**

As noted above, the parties agree that discovery is premature given the Defendants' pending motion to dismiss and propose that the opening of discovery take place 30 days after all the Defendants have answered any remaining pleadings after the resolution of Defendants' motion(s) to dismiss. The parties further agree that they will provide the Court with a further joint case management statement that details the discovery each party anticipates along with a proposed schedule for discovery and trial at that time or at whatever time the Court so orders.

**18. Trial**

The parties believe this issue is premature given the Defendants' pending motion to dismiss and they request that they be allowed to provide the Court with an updated joint case management statement on this issue 30 days after all the Defendants have answered any pleadings that remain at issue in this matter or at a date set by this Court after the resolution of the Defendants' motion(s) to dismiss.

**19. Disclosure Of Non-Party Interested Entities Or Persons**

**Defendants' Statement**

The Defendants filed their certification of interested entities or parties on May 17, 2021 in which they note that the certification does not apply to the District Defendant and that as to the Boardmember Defendants there is no interest to report. This remains true as of the date of filing this joint case management statement.

**Plaintiff's Statement**

Plaintiff has filed her certification of interested entities or parties on August 9, 2021, indicating there are no interested entities or parties to her knowledge to report.

**20.     Professional Conduct**

**Defendants' Statement**

All attorneys of record for the Defendants have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**Plaintiff's Statement**

All attorneys of record for the Plaintiff have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters.**

The parties are not aware of any other matters that would assist in this case at this time.

DATED: August 12, 2021          MEYERS NAVE

By:     /s/ Deborah J. Fox
DEBORAH J. FOX
Attorneys for Defendants
SAN FRANCISCO UNIFIED SCHOOL DISTRICT; COMMISSIONER JENNY LAM; COMMISSIONER FAAUUGA MOLIGA; COMMISSIONER MATT ALEXANDER; COMMISSIONER KEVINE BOGGESS; and COMMISSIONER MARK SANCHEZ

DATED: August 9, 2021           LAW OFFICES OF BONNER & BONNER

By: /S/ *Charles A. Bonner*
CHARLES A. BONNER
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2021, I electronically filed the foregoing **JOINT CASE MANAGEMENT STATEMENT** with the Clerk of the Court using the CM/ECF system.

I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Gabrielle Duran
Gabrielle Duran

3846687