UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISON COLLINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-02272-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 16, 23 |

Pending before the Court is Defendants' (San Francisco Unified School District ("SFUSD") and individually named SFUSD board commissioners Lam, Moliga, Alexander, Boggess, and Sanchez) motion to dismiss Plaintiff Collins's Complaint, for which briefing is complete. Dkt. Nos. 16 ("Mot."), 33 ("Opp."), and 39 ("Reply"). Also pending is Plaintiff's motion for a preliminary injunction. Dkt. No. 23. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Plaintiff's motion for preliminary injunction.

**I.　BACKGROUND**

Plaintiff Allison Collins is an elected Commissioner on the San Francisco School Board. Dkt. No. 1 ("Compl.") ¶ 1. On March 25, 2021, she was removed from her titular role as Vice-President and from membership on all committees by a School Board resolution. *Id.* The resolution was passed by the individually named Defendants in a 5-2 vote. *Id.* The resolution called for her resignation, referencing "inflammatory statements" made by Plaintiff regarding the Asian American community in a series of tweets from 2016 as the primary impetus for her removal. *Id.* ¶ 11. Because Plaintiff refused to resign, the resolution instead moved to remove her

1  from her leadership position and committee assignments. *Id.*

2  Plaintiff brings a number of claims against SFUSD and the individually named board members, including three claims under 42 U.S.C. section 1983 for violation of her First Amendment right to free speech, Compl. ¶ 65, and violation of her Fourteenth Amendment rights based on deprivation of liberty, *Id.* ¶ 89, and deprivation of property, *Id.* ¶ 102. She also brings several state law claims including Intentional Infliction of Emotional Distress, *Id.* ¶ 109, Negligence, *Id.* ¶ 112, Violation of Property Interests, *Id.* ¶ 114, and Retaliation, *Id.* ¶ 119.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

### III.  DISCUSSION

As a threshold matter, Defendants contend that Plaintiff's federal claims are barred as a matter of law. They argue that claims against SFUSD are barred under the Eleventh Amendment and claims against the individual board member defendants are barred under the Eleventh Amendment or, alternatively, by the doctrine of qualified immunity. Mot. at 4-5.

#### A.  Claims Against SFUSD

Defendants argue that SFUSD is immune from suit because school districts in California are considered state agencies entitled to Eleventh Amendment immunity. Mot. at 5. The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commended or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State."

U.S. Const. amend. XI. "Although the amendment does not by its terms prohibit an action against a state by one of the state's own citizens, the Supreme Court has recognized such a prohibition." *BV Eng'g v. Univ. of Cal., LA*, 858 F.2d 1394, 1395 (9th Cir. 1988). The Court must answer two questions to determine if there is appropriate subject matter jurisdiction: "(1) whether [Plaintiff's] claims are 'against the government' . . . and if so, (2) whether the government has waived its sovereign immunity over those claims." *E.V. v. Robinson*, 906 F.3d 1082, 1090 (9th Cir. 2018).

Turning to the first question, the Ninth Circuit has long held that school districts in California are considered state agencies entitled to Eleventh Amendment immunity. *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 926 (9th Cir. 2017) ("School districts . . . in California remain arms of the state and cannot face suit."); *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007) (holding that the Santa Clara County Office of Education and the East Side Union High School District are "arms of the state" entitled to Eleventh Amendment immunity). Further, the district courts in this district have previously held that SFUSD is a state actor entitled to qualified immunity. *See Scott v. San Francisco Unified Sch. Dist.*, No. C-13-04321(EDL), 2013 WL 6185598, at *5 (N.D. Cal Nov. 26, 2013); *T.M. v. San Francisco Unified Sch. Dist.*, No. C 09-01463 CW, 2009 WL 2779341, at *4 (N.D. Cal. Sept.

3

1, 2009); *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1402 (N.D. Cal. 1997).

Plaintiff does not appear to contest Defendants' argument that SFUSD is immune from suit under the Eleventh Amendment. *See* Opp. at 4. In fact, she does not refer to SFUSD in her opposition to the Eleventh Amendment claims at all. *Id.* Ninth Circuit authority clearly supports the finding that SFUSD, as a California school district, is entitled to Eleventh Amendment immunity. Given this clear precedent and Plaintiff's lack of opposing arguments, the Court also finds that the inadequacy of Plaintiff's claims against SFUSD cannot be cured by allegations of other facts. *See Lopez,* 203 F.3d at 1130.

Accordingly, the motion to dismiss all claims against SFUSD is **GRANTED WITHOUT LEAVE TO AMEND**. SFUSD is also **DISMISSED** as a defendant to this suit.

### B. Claims Against Individual Board Members

Defendants further contend that Plaintiff's claims against the individual School Board Commissioners are barred as a matter of law under either the Eleventh Amendment or the doctrine of qualified immunity. Mot. at 5. It is not entirely clear from the Complaint and Plaintiff's opposition whether Plaintiff is suing the board members in their individual capacity or their official capacity. *See* Opp. at 4 (Plaintiff explains the theories of liability for defendants acting in either their official or individual capacity). If the suit is against the board members in their official capacity, Defendants argue that the Eleventh Amendment bars all claims. *Id.* If the suit is against the board members in their individual capacity, Defendants argue that the doctrine of qualified immunity bars all claims. *Id.* Given the ambiguity in Plaintiff's complaint and the necessity of construing the complaint in the light most favorable to Plaintiff, the Court will consider the claims as alleged against the individual Defendants in both capacities. *See Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1407 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001) (noting that "[i]t is unclear from the complaint whether Plaintiff is suing the individual defendants in their official or personal capacities" but finding that the court "must assume that the plaintiff has alleged violations of her civil rights by the individual defendants in both capacities.").

#### i. Official Capacity

Defendants argue that Plaintiff's claims against the board members should be construed as

1  brought against them in their official capacity because the claims "stem from official action of the
2  legislative body." Mot. at 5. Plaintiff contends that the Eleventh Amendment does not bar actions
3  for injunctive relief against Defendants in their official capacity because the *Ex parte Young*
4  doctrine permits actions for prospective declaratory or injunctive relief when state officers violate
5  federal law. Opp. at 4.

"Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). This exception to the sovereign immunity bar is the *Ex parte Young* doctrine. *Id.*; s*ee Ex Parte Young*, 209 U.S. 123, 160 (1908) (holding that an injunction against the Attorney General of Minnesota was not prohibited by Eleventh Amendment immunity where he was alleged to have violated the Fourteenth Amendment). To determine whether the *Ex parte Young* doctrine is applicable, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002). In *Arizona Students' Association v. Arizona Board of Regents*, the Ninth Circuit concluded that the *Young* exception was applicable where the plaintiff had properly alleged an ongoing First Amendment retaliation claim and requested both prospective injunctive relief and declaratory relief. *Ariz. Students' Ass'n*, 824 F.3d at 865. Neither the claim for declaratory relief nor the claim for prospective injunctive relief was barred as against the individual members of the school board. *Id*; *see also Koala v. Khosla*, 931 F.3d 887, 893-895 (9th Cir. 2019) (finding the relief sought by Plaintiff was consistent with *Ex parte Young* and thus not barred by the Eleventh Amendment where the plaintiff alleged "an ongoing violation of its First Amendment rights," and the judgment would cause no increase or decrease to the overall financial burden of the state).

While Plaintiff certainly seeks prospective relief in the form of a preliminary injunction to reinstate her as Vice President, *see* Compl. ¶ 85; Dkt. No. 23, the Court is unable to find in her complaint an adequate allegation of an "ongoing violation of federal law," much less an alleged

5

1  "practice, policy, or procedure" of Defendants that "animates the constitution violation at issue."
2  *See Ariz. Students' Ass'n*, 824 F.3d at 865 ("To bring such a claim [under the *Ex parte Young*
3  doctrine], the plaintiff must identify a practice, policy, or procedure that animates the
4  constitutional violation at issue."); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party
5  in interest in an official-capacity suit is the governmental entity and not the named official, 'the
6  entity's policy or custom must have played a part in the violation of federal law.'" (quotation
7  marks omitted)).

Plaintiff argues that the individual Defendants "personally participated in the deprivation of [her] rights" under section 1983 and cites to allegations of the specific actions she says Defendants committed against her. Opp. at 4 (citing Compl. ¶¶ 4, 7, 13, 47, 51, 54 57). But she does not identify an ongoing violation of federal law, as opposed to alleging a past violation of federal law caused by discrete past actions. Nor does she identify "a practice, policy, or procedure that animates the constitutional violation at issue." *Ariz. Students' Ass'n*, 824 F.3d at 865. The closest that Plaintiff comes to alleging an ongoing violation of federal law is her allegation that Defendants' "'Resolution' was, and still is, 'abridging the freedom of speech'" of Plaintiff. Compl. ¶ 12. But nowhere in her complaint does Plaintiff allege facts supporting this legal conclusion. And Plaintiff does not explain in her opposition how the resolution that removed her from her position as Vice President constitutes an ongoing violation of federal law. While the Court is required to construe Plaintiff's allegations in the light most favorable to her, the Court cannot find that this unsupported legal conclusion is adequate to plead an ongoing violation of federal law. Accordingly, the Court **GRANTS WITH LEAVE TO AMEND** the motion to dismiss Plaintiff's claims as to the individual Defendants in their official capacity.

### ii. Individual Capacity

Defendants further contend that even if Plaintiff's claims are construed as claims against Defendants in their individual capacity, the claims are barred under qualified immunity. Mot. at 6. Plaintiff's allegations are not explicit as to how Defendants acted in their individual capacity, aside from identifying that "each Defendant personally participated" in the alleged deprivation of her rights. *See* Opp. at 4; Compl. ¶ 78.

    "In § 1983 actions, the doctrine of qualified immunity protects city officials from personal liability in their *individual* capacities for their official conduct so long as that conduct is objectively reasonable and does not violate clearly established federal rights." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010). A qualified immunity analysis has two prongs: "(1) whether, '[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right;' and (2) whether that right was clearly established." *Id.* at 967. If either question is answered in the negative, the defendant is immune from liability. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first prong is a factual inquiry, while the second is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010).

    "A government official 'violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violated that right.'" *Shooter v. State of Ariz.*, No 19-16248, 2021 WL 3085779, at *13 (9th Cir. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To determine whether a constitutional right has been 'clearly established' for qualified immunity purposes, we must 'survey the legal landscape and examine those cases that are most like the instant case.'" *Krainski v. Nev. Ex rel. Bd. of Regents of Nev. Sys. Of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Shooter*, 2021 WL 3085779, at *5 (citing *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)). Courts "have discretion to address the 'clearly established' prong of the qualified immunity test first; if [the court] conclude[s] that the relevant law was not clearly established, [the court] need not address the other prong concerning the underlying merits of the constitutional claim." *Id.* at *5 (quotation marks omitted).

    In the context of a motion to dismiss, the Ninth Circuit has articulated a stringent standard for a finding of qualified immunity. "[W]hen a district court dismisses a complaint for failure to state a claim based on a qualified immunity defense, we consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly

7

established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d 1228, 1234-35 (9th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).  However, to survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  At the motion to dismiss stage, therefore, a complaint will survive an asserted qualified immunity defense if it "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Keates*, 883 F.3d at 1235 (quotation omitted).

Therefore, the relevant inquiry here is whether, as a matter of law, Plaintiff's complaint contains "even one allegation of a harmful act" by Defendants "that would constitute a violation of a clearly established constitutional right." *Id.*  For the reasons discussed below, the Court concludes that Plaintiff has failed to allege any actions by Defendants that would violate a clearly established constitutional right.

### a. First Amendment Claims

Plaintiff alleges deprivation of her First Amendment rights because Defendants allegedly retaliated against her for speaking out regarding matters of public concern.  Compl. ¶ 66.  The alleged retaliation consists of Defendants' removal of Plaintiff from her role as Vice President and from her committee assignments because of statements she made as a private citizen.  *Id.*  Defendants do not appear to dispute that Plaintiff was speaking in her capacity as a private citizen when she posted the tweets and made the additional comments underlying the First Amendment claim.  *See* Compl. at ¶ 2; *see generally* Mot. at 6-9.  Instead, Defendants contend that Plaintiff's claims are barred as a matter of law because the action taken against her, removal from her Vice President role and committee assignments, is a customary action taken in the political arena and cannot state a claim for First Amendment retaliation, much less allege a violation of a clearly established right for purposes of qualified immunity.  Mot. at 7.

Defendants cite to *Blair v. Bethel School Dist.*, 608 F.3d 540 (9th Cir. 2010), a Ninth Circuit case which seems directly on point.  Mot. at 1, 7-9. *Blair* involved a factually similar situation where the plaintiff brought a retaliation claim against fellow school board members for removing him from his vice president role. *Blair*, 608 F.3d at 544.  The plaintiff alleged that his

removal was in retaliation for speaking against contract renewal of the district's superintendent. *Id.* at 542. The court held that although it was uncontested that plaintiff's statements and votes were protected by the First Amendment, the case was not a typical First Amendment retaliation case because the "adverse action" taken against the plaintiff was "by his peers in the political arena." *Id.* at 543. The *Blair* court relied on three factors distinguishing the case from a typical First Amendment retaliation case: (1) the adverse action taken against the plaintiff was "a rather minor indignity, and de minimis deprivation of benefits and privileges;" (2) "more is fair in electoral politics than in other contexts;" and (3) the board members were also entitled to "a protected interest in speaking out and voting their conscience on the important issues they confront." *Id.* at 545. The court concluded that these factors taken together showed that the school board's action to remove plaintiff as vice president "did not amount to retaliation in violation of the First Amendment." *Id.*

Plaintiff attempts to distinguish *Blair* by arguing that the elected official's speech at issue in that case occurred while the official was in office, and Plaintiff's speech occurred prior to her election. Opp. at 9-10. However, the Ninth Circuit in *Blair* did not draw such a distinction, and the rationale articulated in *Blair*—that while plaintiff "certainly had a First Amendment right to criticize [the superintendent] and vote against his retention . . . , his fellow Board members had the corresponding right to replace him with someone who, in their view, represented the majority view of the Board"—applies with equal force here. *Blair*, 608 F.3d at 545-546. Even if there were a reasonable dispute about whether *Blair* is squarely on point, Plaintiff certainly has not shown that hers was a right so clearly established that "every reasonable official would have understood that what he is doing violated [Plaintiff's] right[s]." *Shooter*, 2021 WL 3085779, at *13. On the contrary, given the many similarities between Plaintiff's claims and the plaintiff's claims in *Blair*, Defendants could reasonably have concluded that their actions were supported by Ninth Circuit precedent. *See Blair*, 608 F.3d at 546 ("Disagreement is endemic to politics, and naturally plays out in how votes are cast.").[1] Accordingly, the Court concludes that Plaintiff has

---

[1] The Ninth Circuit specifically noted that its holding applied "even if the Board's intent was to play political hardball in response to Blair's advocacy," reasoning that "his authority as a member

not alleged an action by Defendants that would constitute a violation of a clearly established First Amendment right.

### b. Due Process Claims

Plaintiff also contends that Defendants violated her Fourteenth Amendment rights, depriving her of both liberty and property interests without due process. Compl. at ¶¶ 89, 102.

The Fourteenth Amendment, in relevant part, provides that:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569 (1972).

#### 1. Deprivation of Liberty Without Due Process

Plaintiff alleges that the protected liberty interest at issue here is her reputation. Compl. at ¶ 90. Where a plaintiff alleges reputational harm resulting from government action, courts recognize this as the "stigma-plus" theory. *Shooter*, 2021 WL 3085779, at *5. The Ninth Circuit has recently explained that this theory may be implicated when "a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him." *Endy v. County of Los Angeles*, 975 F.3d 757, 764 (9th Cir. 2020). But "procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action *plus* alteration or

---

of the Board was unaffected; despite his removal as Board vice president, he retained the full range of rights and prerogatives that came with having been publicly elected." *See Blair*, 608 F.3d at 544. In her complaint and opposition, Plaintiff frequently conflates her rights and duties as a board commissioner with the privileges associated with her previously held role as Vice President and her committee assignments. *See* Opp. at 13. But Defendants' resolution did not remove her from her position as an elected commissioner, only from her titular role and committee assignments. *See* Compl. ¶ 11. Accordingly, the Court finds that the situation is again analogous to *Blair*, and that Plaintiff has not plausibly alleged that the action taken against her is tantamount to being "precluded . . . [from] effectively serv[ing] her constituency." Opp. at 13. Similarly, Plaintiff's reliance on the Supreme Court's decision in *Bond v. Floyd*, 385 U.S. 116, is misplaced. Opp. at 7-9. The plaintiff is *Bond* was prevented from serving in the office to which he had been elected. 385 U.S. at 136-137. Plaintiff in this case remains in her elected position and has been removed only from an internal leadership position and committee assignments. *See* Compl. ¶¶ 9, 11.

extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. County of Los Angeles*, 552 F.3d 1170, 1185 (9th Cir. 2009) (emphasis added). This is the "plus" in "stigma-plus." *See also Blantz v. Cal. Dept. of Corr. and Rehab.*, 727 F.3d 917, 921 (9th Cir. 2013) ("Stigmatizing statements that merely cause 'reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of gainful employment within the trade or profession' do not constitute a deprivation of liberty.") (citation omitted).

Here, Plaintiff argues the "plus" at issue is Defendants' failure to provide her with a "name-clearing hearing." Opp. at 18-19; Compl. at ¶ 93. She cites to *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004), where the Ninth Circuit explained the Supreme Court's ruling that "a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed.'" (internal citation omitted). However, Plaintiff is differently situated from the plaintiff in *Cox*. First, the plaintiff in *Cox* was an employee, not an elected official. *Id.* at 1108-1109. Second, the plaintiff in *Cox* was actually terminated from his employment, not removed from an internal leadership position on an elected commission while continuing to serve on that commission. *Id.*

Based on *Cox* and similar decisions, the Court cannot conclude that "every reasonable official would have understood" that removing Plaintiff from her internal leadership role "violates clearly established law." *See Shooter*, 2021 WL 3085779, at *13. On the contrary, based on the relevant case law, Defendants could have reasonably concluded that Plaintiff would be unable to adequately allege the "plus" of the stigma-plus theory given that she was not terminated from her job or excluded from practicing her profession. *See, e.g., Schwake v. Arizona Board of Regents*, 821 Fed. Appx. 768, 771 (9th Cir. 2020) (finding Plaintiff failed to identify a protected liberty interest where there was no stigmatizing effect that "effectively exclude[d] [him] completely from [his] chosen profession"); *Krainski v. Nev. ex. rel. Bd. of Regents of Nev. Sys. Of Higher Educ.*, 616 F.3d 963, 971 (9th Cir. 2010) (affirming dismissal of § 1983 action where the plaintiff's allegation of reputational injury and loss of future income were insufficient to satisfy the stigma-plus theory); *Westfall v. City of Crescent City*, 2011 WL 2110306, at *8 (N.D. Cal. 2011) (finding Plaintiff's allegations of emotional distress insufficient to allege the "plus" for the stigma-plus

11

1    test). Accordingly, the Court finds that Plaintiff has not alleged an act by Defendants that would
2    constitute a violation of a clearly established constitutional right based on deprivation of liberty
3    without due process.

### 2. Deprivation of Property Without Due Process

Plaintiff's claim for deprivation of property without due process claim relies on the California Supreme Court decision in *Skelly v. State Personnel Board*, 15 Cal.3d 194 (1975). Compl. ¶ 103. She alleges that the California Supreme Court in *Skelly* held that "a civil service or public sector employee has a property right to his job" and cannot be deprived of it without due process. *Id.* Plaintiff supports this argument by citing to two employment termination cases that are neither recent nor controlling. *See Collins v. Morris*, 438 S.E.2d 896 (Ga. 1994) (concerning an elected official removed from an elected role by a recall election); *Wilson v. Robinson*, 668 F.2d 380 (8th Cir. 1981) (concerning deputy employees of the sheriff's department terminated prior to reappointment).

While it is the case that "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of their employment make it clear that the employee can be fired only for cause," *see Blantz v. Cal. Dept. of Corr. and Rehab.*, 727 F.3d 917, 921 (9th Cir. 2013), Plaintiff's situation is not analogous to that of a government employee who was fired despite tenure or lack of cause. Both *Skelly* and relevant Ninth Circuit precedent concern termination from employment. *See id.*; *Skelly*, 15 Cal.3d at 194. As discussed above, Plaintiff has not been terminated from any employment.

Defendants also argue that under California Government Code section 3540.1(j), Plaintiff should not be considered a public employee. Mot. at 11. The code provides, in relevant part:

> (j) 'Public school employee' or 'employee' means a person employed by a public school employer *except persons elected by popular vote* . . .

Cal. Gov't Code § 3540.1(j) (emphasis added). The Court agrees that because Plaintiff was elected to her role as school board commissioner, she presumably falls within the exception described and should not be considered a "public school employee." *See* Compl. at ¶ 39.

Plaintiff does not present a compelling argument for extending the Fourteenth Amendment

1  precedent protecting government employees from termination to her removal from an internal
2  leadership position on an elected school board. *See* Opp. at 19-20. Even if she had, that would
3  not be enough to allege an act by Defendants that would constitute a violation of a clearly
4  established due process right.

Thus, the Court finds that the constitutional claims against Defendants in their individual capacity are barred by qualified immunity. Accordingly, the motion to dismiss as to the individual Defendants is **GRANTED WITH LEAVE TO AMEND**.

### C. State Law Claims

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotations omitted).

Having dismissed all the federal claims, the Court, in its discretion, declines to assert supplemental jurisdiction over the remaining state law claims unless and until Plaintiff can state a valid federal claim. Accordingly, Plaintiff's state law claims are **DISMISSED** without prejudice. Plaintiff may reassert these claims (but no new state law claims) in any amended complaint.[2]

### D. Motion for Order to Show Cause

Also pending before the Court is Plaintiff's application for Temporary Restraining Order ("TRO") and preliminary injunctive relief. Dkt. No. 23. The requested TRO and injunction would allegedly restore the status quo, returning Plaintiff to the vice president role and committee positions she held before the Resolution was passed. Dkt. No. 23 at 1.

---

[2] Because the Court dismisses Plaintiff's state law claims without prejudice, the Court will also **DEFER** ruling on Defendants' anti-SLAPP motion, Dkt. No. 17, until Plaintiff files an amended complaint that adequately states a federal claim. Defendants will have an opportunity to renew or amend their anti-SLAPP motion, if necessary, following the filing of Plaintiff's amended complaint.

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking preliminary relief must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Where a plaintiff seeks mandatory injunctive relief instead of prohibitory injunctive relief to maintain the status quo, a plaintiff's burden is "doubly demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Such a plaintiff "must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Id.* And the Ninth Circuit often cautions that a mandatory injunction "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Id.* District courts therefore should deny such requests "unless the facts and law clearly favor the moving party." *Stanley*, 13 F.3d at 1320 (quotation omitted). Put differently, mandatory injunctive relief should not issue in "doubtful cases." *Garcia*, 786 F.3d at 740.

    **i. Likelihood of Success on the Merits**

Under the "sliding scale" approach for a preliminary injunction, "a stronger showing of one element may offset a weaker showing of another." *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). "[A]t an irreducible minimum, though, the moving party must demonstrate

a fair chance of success on the merits, or questions serious enough to require litigation." *Id.* (quotation omitted). And because the Court finds that Plaintiff is seeking a mandatory injunction, she must establish that the law and facts clearly favor her position. *See Garcia*, 786 F.3d at 740. The Court finds that Plaintiff has not met this very high standard.

Plaintiff's argument that she is likely to succeed on the merits is a recitation of the rationale supporting her First Amendment retaliation claim. *See* Dkt. No. 23 at 21-25. As detailed above, this claim, as currently pled, is barred by the Eleventh Amendment and the doctrine of qualified immunity. The Court also notes the binding Ninth Circuit precedent in *Blair* that makes it unlikely she will prevail on her First Amendment claim. *See Blair*, 608 F.3d at 545. Because Plaintiff has failed to establish that the law and facts clearly favor her position, Plaintiff fails to establish likelihood of success on the merits. *See Garcia*, 786 F.3d at 740.

Thus, at this stage, the Court finds that Plaintiff has not met her extraordinarily high burden to warrant a mandatory preliminary injunction. Because the Court finds that Plaintiff has not met her burden, the Court need not consider the remaining *Winter* factors. Accordingly, Plaintiff's application for TRO and request for preliminary injunction are **DENIED.**

## IV. CONCLUSION

The Court **GRANTS** the motion to dismiss. Plaintiff's claims against Defendant SFUSD are **DISMISSED WITHOUT LEAVE TO AMEND** and SFUSD is **DISMISSED** as a defendant in this case. Plaintiff's claims against individual **DEFENDANTS** are **DISMISSED WITH LEAVE TO AMEND**. Plaintiff may not add any new causes of action or defendants to an amended complaint, and any amended complaint must be filed within 21 days from the date of this Order. The Court also **DENIES** Plaintiff's motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: August 16, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

15